P. W. FANNING v. J. G. WHITE & CO. AND NORFOLK AND
SOUTHERN RAILWAY.

(Filed 28 October, 1908.)

1. Trespass—Negligence—License—Explosives.

    One storing dynamite on his own premises for legitimate purposes, in boxes, with the word "Dynamite" written or printed on the box containing it, placed in a shanty with the door open and window torn out, thus affording ample opportunity to see the danger, owes no further duty to a person going upon the premises without either an express or implied license, and is not liable to him for damages caused by his companions shooting into the shanty and exploding the dynamite, not knowing it was there.

2. Same—Independent Acts.

    When one trespasses upon the premises of the owner of lands and shoots into a shanty in which the owner had rightfully placed dynamite, and thereby causes an explosion, which injures a third person, the act of shooting, being done by an independent, intelligent agency, was the cause of the injury, and the owner of the lands is not liable for damages.

CLARK, C. J., dissenting, arguendo; HOKE, J., concurs in dissenting opinion.

ACTION tried before W. R. Allen, J., and a jury, at May Term, 1908, of CRAVEN.

Plaintiff sues the defendant railroad company and White & Co., contractors, for damages by reason of injuries alleged to have been sustained by the negligence of defendants. The testimony showed that defendants White & Co. were, on and before 14 May, 1907, engaged in constructing a railroad for defendant Norfolk and Southern Railroad Company from New Bern to Washington, N. C.; that while so engaged defendants White & Co. stored in an old shanty a large quantity of dynamite, in boxes, upon which were painted or printed the words 'Handle With Care—Dynamite." There was no sign or warning on the shanty. The shanty was rotten, the window was torn out and the door open on the side next to the river. The back end was nailed up. It was about 20 feet from the Neuse River, about 180 feet from the county road and 50 feet from the railroad track, on the right of way. There was a little shanty about 70 yards away. The county road led to the bridge over the river to the city of New Bern, about one mile distant. The village of Bridgeton had lately been incorporated, and included the location of the shanty. It is about one-half to three-fourths of a mile from the foot of the county bridge to the railroad bridge. The principal buildings in Bridgeton are located "right at the foot of the county bridge." The growth around the shanty was gallberry bushes. The shanty was at an isolated place when the tide was high, and when low there was a good place to walk on the banks of the river. Plaintiff had resided about 200 yards away from the shanty for about two weeks; did not know that dynamite was in it. On Sunday morning, 14 May, 1907, plaintiff, in company with McGhee, went to the river for the purpose of bathing. On their return they passed near the shanty, back of it, near the river. McGhee had a pistol and had fired four or five times at trees. He said that he had one more ball, and asked plaintiff to show him something to shoot at. While plaintiff was looking around, McGhee shot .at the shanty. The ball passed through a hole and struck the

dynamite, causing an explosion, blowing up the shanty, trees, etc., and injuring plaintiff. The shanty, 70 yards away, was injured and several houses in Bridgeton shaken and window lights broken. The same effect was felt in New Bern. The plaintiff did not direct or advise his companion to shoot at the shanty.

At the conclusion of the evidence introduced by the plaintiff, defendants moved for judgment of nonsuit. Motion allowed. Plaintiff excepted and appealed.

*D. E. Henderson* and *D. L. Ward* for plaintiff.
*Moore & Dunn* for defendants.

CONNOR, J., after stating the case: The injuries sustained by plaintiff resulted from the shooting by McGhee into the shanty, as set out in the record in *McGhee v. Railroad,* decided at the last term of this Court and reported in 147 N. C., 142. In that case the defendant demurred to the complaint, in which it was charged that the shanty containing the dynamite was a public nuisance. It was then strongly insisted and, in the dissenting opinion, maintained that the demurrer admitted the allegation. His Honor, on the trial of this case, heard the plaintiff's testimony, from which it appears that the shanty was 60 yards from the public highway and that the window was "torn out," the door stood open and the boxes containing the dynamite were so marked as to give warning to any person who would take the trouble to look into the door or the open place in which the window had been. The majority of the Court thought, for the reasons given in the opinion, that, conceding the truth of the allegation in the complaint, the dynamite stored in the shanty was a public nuisance, the plaintiff could not recover. Without repeating what we have so lately said, we are of the opinion that the testimony here falls far short of showing that defendants were maintaining any nuisance. To store dynamite being used for a legitimate purpose necessary for the construction of a rail-

road on its own right of way, in a shanty with the door open and the window torn out, affording any person ample opportunity to see the danger, with the warning written or printed on the boxes, cannot violate any duty owing to a person going upon the premises without a license, either express or implied. The basis of the decision in *McGhee's case* being that defendant owed no duty to him in regard to storing the dynamite, and that it could not by any reasonable prevision have foreseen that anyone would shoot into the shanty, we are unable to perceive any ground upon which the plaintiff's case can be distinguished. If, as we then held, the explosion of the dynamite was not the result of any actionable negligence on the part of the defendants, but of the wrongful act of an independent, intelligent agent, we do not see how any liability can attach for the injuries sustained by plaintiff. If I have an article or a structure on my premises, entirely harmless unless interfered with by a trespasser, and I have no reasonable ground to anticipate that a trespasser will come upon my premises and interfere with the structure, and two trespassers, in company, come together, and one of them, by interference, causes injury to the other, the law will attribute the injury to the interference of the intelligent, intervening agent and not to the condition created by me. This principle is illustrated by the decision in *Harton v. Tel. Co.*, 146 N. C., 429. It is there said that, assuming the pole to have fallen by defendant's negligence, the act of Carpenter in replacing it in a dangerous position was the *causu causans* of the injury sustained by plaintiff's intestate. In what respect, upon principle, does this case differ from that? Conceding that defendant was negligent in storing the dynamite, which we do not hold, it would never have injured the plaintiff but for the interference of McGhee, his cotrespasser. As we held in *Harton v. Tel. Co., supra,* that the pole, lying across the road by defendant's negligence, could never have fallen upon the plaintiff's intestate unless

Carpenter had interfered with it, so here the dynamite was absolutely harmless but for McGhee's act of shooting into the shanty. As it now appears, by walking a few steps he would have seen that it contained boxes marked "Dynamite." Without pursuing the subject further, we entertain no doubt that his Honor, both upon principle and authority, correctly directed judgment of nonsuit. There is

No Error.

CLARK, C. J., dissenting: The plaintiff having been non-suited, his evidence must be taken as true, with the most favorable inferences which a jury could have drawn therefrom. *Stone v. Railroad,* 144 N. C., 221. It appears therefrom that the defendants stored a quantity of dynamite in an old two-room shanty, about 60 yards from the county road and 50 feet from the railroad track, over which a half dozen trains passed daily. The rear end of the shanty towards the public road and railroad track was nailed up. At the other end, next to the river, the door was sometimes open and one of the windows was broken out. There was nothing to indicate that a dangerous explosive was stored there. The plaintiff and one McGhee were strolling there, when, without any notice to plaintiff or participation by him, McGhee fired his pistol at a knot hole in the rear end of the shanty. Neither McGhee nor plaintiff had any suspicion that dynamite was stored there. The shanty was located within the corporate limits of the town of Bridgeton, which contains 300 or 400 inhabitants, and not far from the bridge, from New Bern, over Neuse River, and within 70 yards of a flag station on the railroad.

Upon the firing of the pistol an explosion followed, which cut down the trees 100 yards around, excavated a hole 12 feet deep and 16 feet square, moved the railroad track 12 to 15 inches, blew the end out of a house 70 yards off, and knocked the plaintiff 20 or 25 feet, burying sticks in his face an inch deep. Not a splinter of the house was left. The

148—35

explosion occurred about fifteen minutes before the passenger train was scheduled to pass. The dynamite was stored in the rear room, where no one would be likely to see it. A covey of partridges were picked clean by the explosion, and a dog was blown up into a tree. The explosion was decidedly felt in New Bern, across the river. It was also in evidence that the defendants White .& Co., the contractors who placed the dynamite in this house, had not worked in that vicinity for six months, their railroad work being completed, and trains were running regularly.

It ought not to require any argument to prove that it was the grossest negligence to deposit a high-powered explosive, in a quantity capable of producing the above effects, in a house within 50 feet of a railroad track over which passenger trains were running, and within 60 yards of a much-traveled public road leading from a large town like New Bern, which was near by, without any notice posted on the house or other indication of the deadly power concealed within. More especially was this so when the party who had placed the dynamite there had removed from the vicinity. for six months, and there was no purpose for which the dynamite could longer be used, and no one could suspect, in the absence of all notice or warning, that there was any dynamite in the vicinity. Indeed, the passenger train, by only some fifteen minutes, missed this explosion, which moved the railroad track bodily, sideways, 12 to 15 inches. It was not only negligence, but criminal negligence, to leave the dynamite in such a house, unguarded and without any notice posted, for six months after its owners had left, in such close proximity to a railroad track and a public road.

If it be conceded that McGhee was guilty of contributory negligence (which would debar him from recovery), the plaintiff was an innocent bystander and in nowise responsible therefor. The plaintiff could not have been injured by the negligence of McGhee in firing his pistol without the concurring

(and far greater) negligence of the defendants. They were, as to the plaintiff, joint tort- feasors, and at his option he could sue either or both.

Had this been a spring gun, the owner of the premises, who had left it there for six months without any notice, would be liable for any damage resulting. For a stronger reason, he is liable when it is 1,600 pounds of dynamite.

"The owner of a farm leased small parcels in the middle of it to laboring men. A farm road approached the holdings, but did not reach them. Towards the leased parcels from the end of the road the lessor stored a box of dynamite, with cartridge exploders, under a low shed made against a stump and only partially enclosed, and in a rough bound box, not always kept covered and never securely fastened. A child of one of the lessees who had been at work in the field went into the shed, broke one of the cartridges from the box and, striking it with a stone, exploded it and was injured. Neither he nor his father knew what was kept in the shed or knew of any danger there or of any reason for keeping away from it, and there was no warning on or about the shed, except the word 'Powder' written on the box, which neither of them could have read: *Held,* that the lessor was responsible." *Cooley, C. J.,* in *Powers v. Harlow,* 51 Am. Rep., 154, 160.

It is useless to cite further cases. The bare statement of the above facts is the statement of gross negligence. *Res ipsa loquitur.* Without such negligence on the part of the defendants, the plaintiff would not have been injured. McGhee would not have fired if he had had any reason to suppose there was any dynamite stored in such close proximity to the public road and passing trains on the railroad. The want of any notice, the six months' absence of the owners of the dynamite, and the completion of the railroad work in which it had been used were enough to put him off his guard. But even if McGhee was guilty of negligence, the negligence of the defendants concurred in producing the injury, and both are liable to the plaintiff.