J. S. MOODY *v.* GUFL REFINING CO.*

J. M. HORN *v.* SAME.

(*Nashville.* December Term, 1919.)

1. **NEGLIGENCE. Proximate cause, when a question for the jury.**

When the facts of the particular case are disputable and are of such a character that differe ntminds might reasonably draw different conclusions therefrom, the question of what is the proximate cause of an injury is one of fact for the jury, but when the facts are undisputed and are susceptible of but one inference, the question is one of law for the Court.

2. **NEGLIGENCE. Intervening cause, when a question of law.**

When the facts are uncontroverted and only one inference can be drawn, whether there was a sufficient intervening cause preventing the defendant's act from being the proximate cause of the injury is a question of law.

3. **NEGLIGENCE. ''Proximate cause'' defined.**

An injury that is the natural and probable consequence of an act of negligence is actionable, and such an act is the proximate cause of the injury, but an injury which could not have been foreseen nor reasonably anticipated as the probable result of an act of negligence is not actionable, and such an act is either the remote cause, or no cause whatever of the injury. (*Post, pp.* 290, 291.)

Cases cited and approved: Railroad v. Pugh, 97 Tenn., 624; Cole v. German Sav. & L. Soc., 59 C. C. A., 593; Hoag v. Lake Shore & M. S. R. Co., 85 Pac., 293; Ryan v. New York C. R. Co., 35 N. Y., 210; Stone v. Boston & A. R. Co., 171 Mass., 536; Laidlaw v. Sage, 158 N. Y., 73; Fanning v. White, 148 N. C., 541.

Case cited and distinguished: Kreigh v. Westinghouse, C. K. & Co., 152 Fed., 120.

4. **NEGLIGENCE. Spilling gasoline, causing fire, while avoiding peril from blasting, not actionable.**

An employee of defendant in unloading a tank car filled with gaso-

---

*On care required of one in sudden emergency, see note in 37 L. R. A. (N. S.), 43.

Moody v. Gulf Refining Co.

line is not negligent in that, while emptying the spout at the bottom of the tank into a tub, he, on warning of blasting of rock near by, ran around the car to escape danger, and in his absence the tub overflowed, and the overflow was ignited, and the fire burned plaintiff's building. (*Post, pp.* 291, 292.)

5. **NEGLIGENCE. Act in emergency not negligent.**

One who in sudden emergency acts according to his best judgment, or who, because of want of time in which to form a judgment, omits to act in the most judicious manner, is not chargeable with negligence. (*Post, p.* 292.)

Case cited and approved: Lemay v. Springfield Railway Co., 37 L. R. A. (N. S.), 43.

6. **NEGLIGENCE. Act of boys throwing matches into spilled gasoline proximate cause of fire.**

Where boys, knowing inflammable nature of gasoline, in the short absence of defendant's employee who did not know that they had matches, threw lighted matches in pools of gasoline on the ground, occasioned by unloading a tank car, and thereby a fire was started, burning plaintiffs' building, the act of the boys was an independent, intervening cause, for which defendant was not liable, conceding its negligence in permitting the gasoline to escape. (*Post, pp.* 292, 293.)

---

FROM DAVIDSON.

---

Appeal from the Circuit Court of Davidson County to the Court of Civil Appeals, and by *certiorari* to the Court of Civil Appeals from the Supreme Court.—Hon. A. B. Neil, Judge.

W. H. Washington and C. W. Rutherford, for Moody and Horn.

Chas C. Trabue, for Gulf Refining Co.

Mr. Justice Hall delivered the opinion of the Court.

These two actions were brought by the plaintiffs in error, who will be hereinafter referred to as the plaintiffs, to recover damages for loss of property growing

out of a fire which is alleged to have resulted from defendant's negligence.

The suits, by consent, were tried together in the court below, and upon the conclusion of the evidence a motion for a directed verdict was made by the defendant, and was sustained by the trial judge, and the plaintiffs' suits were dismissed. From this judgment they appealed to the court of civil appeals, where both cases, were by consent, again heard together, and the judgment of the trial court was affirmed. The cases are now before this court upon petitions for writs of *certiorari*.

The material facts are undisputed, and, briefly stated, are as follows: The defendant is a wholesale dealer in oils and gasoline, and in conducting its business in the city of Nashville, Tenn., maintained a large warehouse fronting on the Tennessee Central Railroad at a point near where said railroad crosses Twenty-Fifth avenue, at which it received the commodities handled by it. It received large quantities of gasoline from railroad tank cars, the contents of which were pumped from the cars into storage tanks situated on the defendant's warehouse premises. These tank cars were delivered to its premises by the railroad company by means of a switch or side track extending from its main line from a point west of where it intersected with Twenty-Fifth avenue to and by the defendant's warehouse premises.

The fire that destroyed the property belonging to plaintiffs originated on this side track in front of defendant's warehouse, and destroyed defendant's warehouse and a large quantity of merchandise stored therein, and from the defendant's premises traveled or was carried by the wind to the premises of the plaintiffs, igniting the houses occupied by them, and destroyed

the property the value of which is sought to be re-
covered in these actions.

The declarations charged that the defendant main-
tained its premises in a negligent and dangerous con-
dition, in that it permitted quantities of gasolint and
oil to escape or to be spilled on its premises to such
extent that the floor and other timbers of the warehouse
had become soaked with oil and gasoline; that the ties
of the side track were also soaked with oil and gasoline
and other inflammable substances, and that oil and gaso-
line and other inflammable substances were permitted by
defendant to accumulate "in puddles and streams" on
its said premises; that defendant negligently handled
its stock of gasoline and spilled same adjacent to the
public highway in a thickly populated part of the city of
Nashville, where many men, women, and children were
in the habit of walking and playing; that the gasoline
was left unguarded to such an extent that the pub-
lic safety was endangered, and the premises of
the defendant had become a public nuisance; that
on the date of the fire, while some boys were
smoking and lighting matches on or near the prem-
ises of the defendant, which fact was known to de-
fendant's employee, the gasoline took fire from the
act of said boys in lighting matches, or some
other act committed by them, "either accidently or in
play, or from some other cause;" and that the flames
from same extended into the warehouse of the de-
fendant, from which it was communicated from the
premises of the defendant to the premises of the plain-
tiffs.

The evidence shows that at the time of the fire the
defendant was engaged in unloading, or preparing to

unload, a tank car of gasoline, which stood on the side track in front of its warehouse, located only a few feet from the side track. These tank cars consist of large long metal tanks built on railroad trucks, and are —— feet in length, —— feet in diameter, and some of them hold several thousand gallons of gasoline. On the top of these tanks, and about the center of the same, is what is called a dome, which is about 18 inches in diameter, and extends some distance above the top of the tank. In the top of this dome is an opening, in which a large cap is fitted to close the opening and at the bottom of the tank, and about the center of the same, is a spout or leg which extends below the body of the tank. The dome is used in loading the car with gasoline, and for any and all purposes where it is necessary to enter the tank, and the leg is used in unloading the car. On the inside of the tank, and just about the point where the leg connects with the bottom of the tank, is a valve, and from this valve a rod runs up into the dome, and to the top of this rod is attached an arm or lever, and when it is desired to prevent the gasoline from escaping throught the leg, the valve, by means of this rod or arm, is tightly closed. When it is desired to empty the car through the leg, the valve is opened by means of the rod extending therefrom into the dome. The tank is unloaded by connecting a hose with the valve in the leg of the tank and pumping the gasoline from the tank into the storage tank, which is located near by.

Two of the defendant's employees had gone on top of the tank car, removed the top from the dome, measured the distance between the bottom of the dome

and the top of the gasoline in the car, and had taken the temperature of the gasoline, which was the usual and customary procedure before unloading it. The rod which led through the car to the valve over the leg was examined to ascertain if it were properly stated or closed so as to prevent the passage of gasoline into the leg when it was opened for the purpose of attaching to the valve the hose preparatory to pumping the contents of the car into the storage tank.

The evidence shows that during the transportation of the car the movement of the gasoline on the inside of the tank washes the sides thereof, and any impurities that may be in the gasoline will, when the car is stopped and permitted to stand for a while, sink to the bottom of the tank, and if the valve in the leg is not tightly closed such impurities will escape into the leg, as will the gasoline. It further appears that, however much care is exercised in loading the tank car and in closing the valve in the leg foreign substances will sometimes get in the way of the valve and it will not close tightly, and gasoline will flow from the tank into the leg. In unloading it is the custom to open the leg by unscrewing and removing the plug in the lower end, and catch the contents of the leg into a vessel or tub, and then attach the hose, by means of which the gasoline is transferred to the storage tank.

At the time of the fire in question a colored employee of the defendant, who was experienced in unloading gasoline from the tank cars, went to the car in question, unscrewed the plug at the lower end of the leg, and placed under it a large tub for the purpose of catching

whatever gasoline and other substance that might flow from said leg; and about the time he placed the tub in position and unscrewed the plug an employee of the Nashville Railway & Light Company, who together with other employees of that company, were digging a hole for an electric light pole across the main line of the railroad company, and about 30 feet from the tank car, informed the employee of the defendant that they were preparing to "shoot," meaning that they were going to set off a blast for the purpose of breaking some rock in said post hole. The defendant's employee, believing that he was in dangerous proximity to the blast which was about to be fired, and having no other means of protection, left the leg from which gasoline was then flowing into the tub and ran around the end of the car to protect himself from the blast. Upon the blast being fired he returned to the leg and found that a sufficient quantity of gasoline had run into the tub to overflow it, and that some of the gasoline was running out of the tub on to the ground. He immediately replaced the plug in the leg to stop the flow of the gasoline. He says that while he was performing this operation some boys, who were standing upon the main track of the railroad about 6 feet away, asked him if it were gasoline or coal oil that was flowing into the tub, to which inquiry defendant's employee says that he told them that it was gasoline.

The undisputed evidence further shows that after defendant's employee had stopped the flow of the gasoline he went into the warehouse for the purpose of getting some buckets to dip some of the gasoline out

of the tub so that it could be removed, and to secure the services of another employee in assenting him to remove the tub and empty its contents into the storage tank. He was gone for this purpose only a very short time, and upon his return the gasoline was on fire, the flames traveling at a rapid rate toward the warehouse, and were soon beyond control.

The uncontradicted evidence is that the fire was produced by these boys, who were standing on the railroad track when defendant's employee left the tub of gasoline and went into the warehouse for the purpose stated, throwing lighted matches into the gasoline in the absence of defendant's employee. This is admitted by one of the boys who indulged in throwing the matches and is also proven by another one of the plaintiffs' witnesses, a Mr. Cooper.

It is further uncontradicted that these boys were from 12 to 14 years of age, and Charlie Reeves, one of the boys, testified that he knew gasoline was highly inflammable and would burn when it came in contact with fire.

It is further shown by the evidence that defendant's warehouse premises are not on a public street or highway, but that men, women, and children in the neighborhood do use the railroad track to a considerable extent in traveling to and from their homes and in going to and from school.

There was evidence tending to show that the defendant's premises had become more or less greasy or oily from gasoline, oils, and other substances which had been permitted to escape or leak from the receptacles in

which they were contained, but the undisputed evidence is that the fire which occasioned the plaintiffs' losses did not originate from this condition, but alone from the matches being thrown into the gasoline contained in the tub, or in that which had flowed from the tub on to the ground.

It is insisted by the plaintiffs that the court of civil appeals erred in not holding that the trial judge erred in directing a verdict in defendant's favor upon the foregoing facts. It is contended by the plaintiffs that the fire which caused the losses sustained by them was the direct and proximate result of the negligent manner in which the defendant maintained its premises, and undertook to unload the tank car in question and in permitting the tub which was used to catch the gasoline that was being emptied from the car to overflow and run out on the ground, and in leaving the tub of gasoline unattended in close proximity to where the boys were, without warning them away from the gasoline and of the danger of the situation, and in leaving them at that point "when it knew, or might have known, that they were smoking cigarettes and striking matches."

The correctness of the plaintiffs' contention depends upon two propositions:

First. Was the defendant negligent in the manner in which it was unloading or removing the gasoline from the tank?

Second. If so, was that negligence the direct and proximate cause of the fire which destroyed plaintiffs' property, or was the fire the proximate result of an independent, intervening cause which could not have been reasonably anticipated by the defendant?

The general rule is that what is the proximate cause
of an injury is a question for the jury; the court in-
structing them as to what the law requires to consti-
tute it, and the jury applying the law to the facts.
But whether it will or will not be a question for the
jury will depend on the facts of each case. Thus where
the facts of the particular case are disputable, and
are of such a character that different minds might
reasonably draw different conclusions therefrom, a
question of fact is presented properly determinable by
the jury. R. C. L. vol. 22, Sec. 31.; *Teis* v. *Smuggler,
Min. Co.,* 158 Fed., 260; 15 L. R. A., (N. S.) 893;
*Pilmer* v. *Boise Traction Co.,* 14 Idaho, 327, 94 Pac., 432,
15 L. R. A., (N. S.) 254; *Stone* v. *Boston,* etc., R. Co.,
171 Mass. 536, 41 L. R. A., 794; *Huber* v. *La Crosse
City R. Co.,* 92 Wis., 636, 31 L. R. A., 583.

But when the facts are undisputed and are sus-
ceptible of but one inference, the question is one of
law for the court. *Teis* v. *Smuggler Min. Co.,* 158
Fed., 260, 15 L. R. A. (N. S.) 893; *Snyder* v. *Colorado
Springs, etc., R. Co.,* 36 Colo. 288, 85 Pac., 686, 8
L. R. A., (N. S.) 781.; *Clark* v. *Wallace,* 51 Colo., 437,
118 Pac., 973., Ann. Cas. 1915B 349 and note; *Illinois
Central R. Co.* v. *Siler,* 229 Ill., 390, 82 N. E., 392, 11
Ann. Cas., 368; *Coy* v. *Indianapolis Gas. Co.,* 146 Ind.,
655, 36 L. R. A., 535; *Missouri Pac. R. Co.* v. *Colum-
bia,* 65 Kan., 390, 69 Pac., 338, 58 L. R. A., 399; *Stone*
v. *Boston, etc., R. Co.,* 171 Mass., 531, 41 L. R. A., 794;
*Smith* v. *Public Service Corp.,* 78 N. J. L., 478, 20 Ann.
Cas., 151.

So where the rule of an intervening efficient cause
is relied on by the defendant, it is ordinarily a question
for the jury whether there was such an intervening

efficient cause as would prevent the negligent act or omission of the defendant from being the proximate cause of the injury. But where the facts are uncontroverted and only one inference can be drawn, the question of whether there was an efficient intervening cause which would prevent the defendant's act from being the proximate cause of the injury has been held to be a question of law. R. C. L., vol. 22, sec. 32; *Clark* v. *Wallace,* 51 Colo., 437, 118 Pac., 937; Ann. Cas. 1913B 355 and note.

It was held by this court in *Railroad* v. *Pugh* 97 Tenn., 624, 37 S. W., 555, that negligence is the want of ordinary care and caution in doing an act, or it is the failure or omission to do what a person of ordinary prudence or caution would do under the circumstances, or it is failure to perform a duty required by law.

In the case of *Kreigh* v. *Westinghouse, C. K. & Co.,* 152 Fed., 120, 81 C. C. A., 338, 11 L. R. A. (N. S.), 648, it was said:

"Negligence is a breach of duty. Where there is no duty or no breach, there is no negligence. An injury that is the natural and probable consequence of an act of negligence is actionable. But an injury which could not have been foreseen nor reasonably anticipated as the probable result of an act or omission is not actio*nable;* and such an act or omission is either the remote cause or no cause whatever of the injury."

To the same effect is the holding of the court in *Cole* v *German Sav. & Soa.,* 59 C. C. A., 593, 124 Fed., 113, 63 L. R. R., 416.

In *Hoag* v. *Lake Shore & M. S. R. Co.,* 85 Pac., 293, 27 Am. Rep., 653, the court held that, in determining what is proximate cause, the true rule is that the injury

must be the natural and probable consequence of the act—such a consequence as, under the surrounding circumstances of the case, might and ought to have been foreseen by the wrong doer as likely to flow from his act.

In *Bryan* v. *New York C. R. Co.*, 35 N. Y., 210, 91 Am. Dec., 49, it was held that damages which were not the necessary or natural consequences nor the result ordinarily to be anticipated were not the proximate result of a negligent act.

In*Stone* v. *Boston & A. R. Co.*, 171 Mass., 536, 51 N. E., 1, 41 L. R. A., 794, it was held that the negligence of a railroad company in storing oil upon its station platform, and in permitting it to remain there in violation of statute, was not the proimate cause of damage by a fire which was started by the careless dropping of a match by a teamster who came to the platform to deliver goods, and who was in no sense a servant, agent, or guest of the railroad company.

In that case and in the case of *Laidlaw* v. *Sage,* 158 N. Y., 73, 52 N. E., 679, 44 L. R. A., 216, it was held that the question was not one for the jury, but that as a matter of law the defendant's negligence could not be said to be the proximate cause of the plaintiff's injury.

In *Fanning* v. *White,* 148 N. C., 541, 62 S. E., 734, the court held that, assuming the defendant who was engaged in construction work, was guilty of negligence in storing a large quantity of dynamite in an old shanty on the railroad right of way, the plaintiff could not recover for an injury sustained by an explosion of the dynamite as the result of the plaintiff's companion shooting into the shanty, though ignorant of the presence of the explosive. The court was of the opinion that the shooting into the dynamite by the plaintiff's com-

panion was the proximate cause of the explosion and injury which resulted therefrom.

In R. C. L., vol. 22, section 8, at page 121, the rule is correctly stated as follows: "An injury that is the natural and probable consequence of an act of negligence is actionable, and such an act is the proximate cause of the injury. But an injury which could not have been foreseen nor reasonably anticipated as the probable result of an act of negligence is not actionable and such an act is either the remote cause, or no cause whatever, of the injury. An injury that results from an act of negligence, but that could have been fore? seen or reasonably anticipated as its probable consequence, and that would not have resulted from it, had not the interposition of some new and independent cause interrupted the natural sequence of events, turned aside their course, and produced it, is not actionable. Such an act of negligence is the remote, and the independent intervening cause is the provimate, cause of the injury."

We are of the opinion that the uncontradicted evidence fails to show any negligence on the part of the defendant in permitting the gasoline to overflow the tub and run out on the ground. The evidence indisputably shows that this was caused by the sudden emergency that arose by the notice being given to the defendant's employee by the employee of the Nashville Railway & Light Company of the impending blast, and which caused defendant's employee to believe that he was in immediate danger. The uncontradicted evidence shows that the car was being unloaded or emptied in the ordinary and usual manner, and in the manner that it was designed to be emptied, and by com-

petent and experienced employees. It is undisputed that just at the moment or just after the cap had been removed from the leg by defendant's employee, notice was given him that a blast was about to be discharged only a few feet away, and defendant's employee, being exposed to said blast, and realizing the dangers incident to the same, ran around the car for protection. It was while thus endeavoring to protect himself from the dangers of the blast that the gasoline overflowed the tub. We are clearly of the opinion that the leaving of the tub under these circumstances was not an act of negligence.

In 20 R. C. L., p. 29, it is stated as follows:

"One who in a sudden emergency acts according to his best judgment, or who, because of want of time in which to form a judgment, omits to act in the most judicious manner is not chargeable with negligence."

This statement of the rule is supported by many cases in the note to the case of *Lemay* v. *Springfield Railway Co.*, reported in 37 L. R. A. (N. S.), 43.

But, even if it be conceded that the defendant was guilty of negligence in the manner in which it kept its premises and the manner in which it was unloading the gasoline in question, still we are of the opinion that such negligence was not the direct and proximate cause of the fire which destroyed the property of plaintiffs, but that said fire was the direct and proximate result of the independent intervening act of the boys in throwing lighted matches into gasoline during the absence of defendant's employee, and that this act on the part of said boys was not such as could have been reasonably anticipated by defendant's

employee. It is not shown that defendant's employee knew that the boys were smoking or that they had matches. The undisputed evidence is that the boys knew it was gasoline that was running into the tub, and knew its inflammable and dangerous qualities, and defendant's employee had no reason to anticipate that they would deliberately throw a lighted match into it during the short interval that he was absent on his errand to secure the buckets and another employee to assist him in removing the tub from the tank car to the storage tank.

It results that we find no error in the judgment of the court below, and it is affirmed, with costs.