# LOUISVILLE & NASHVILLE RAILROAD COMPANY, MRS. JAMES R. BAILEY and JAMES R. BAILEY, v. KATHERINE LEE TISSIA HEAD and CECIL BEDFORD HEAD. —332 S. W. (2d) 682.

Middle Section. August 28, 1959.

Certiorari Denied by Supreme Court February 5, 1960.

P. M. Howse, Jr., David M. Keeble, Nashville, for plaintiffs in error.

C. Allen High, C. Houston Sager, Karl L. Bishop, Nashville, for defendants in error.

SHRIVER, J. The parties will be referred to as plaintiffs and defendants as they appeared in the Court below.

I

Plaintiff, Katherine Lee Tissia Head, sued the L. & N. R. R. Co. and James R. Bailey and wife as co-defendants, to recover for personal injuries received when she was struck by the automobile of James R. Bailey, which was being driven by his wife, on the Ben Allen Road bridge across the L. & N. Railroad tracks in Davidson County.

The husband, Cecil Bedford Head, sued for medical expenses and loss of services of his wife, and the suits were tried together.

The cases against all three defendants were submitted to the jury and resulted in a general verdict and judgment of $20,000 in favor of Mrs. Head and $5,000 in favor of Mr. Head.

From these judgments Mr. and Mrs. Bailey did not appeal but the L. & N. R. R. prayed and perfected an appeal in error and has filed assignments of error.

Two questions are presented here:

1. Is the defendant railroad company guilty of actionable negligence if it be shown that the Ben Allen Road bridge across its tracks is too narrow for two automobiles and a pedestrian to safely pass each other simultaneously?

This first question involves two propositions; (a) Is the railroad under the continuing duty to modernize and widen bridges across its tracks to meet the needs of modern traffic regardless of the fact that the railroad was there first and the public road later crossed it with a bridge built many years before automobile traffic came into existence? (b) Do the statutes on the subject abrogate the common law rule that a public way subsequently built across another public way already existing, must be built and maintained by the person or entity constructing the later one?

2. The second and, perhaps, the determinative question is whether or not the admittedly negligent conduct of the driver of the automobile that struck plaintiff was such an independent, intervening cause as to relieve the railroad of liability even if it was guilty of actionable negligence in maintaining a too narrow bridge.

## II

There was proof to support a finding by the jury of the following facts alleged in the declaration:

On November 10, 1957, about 3:30 P.M. the plaintiff, a pedestrian, was walking in an easterly direction on the North side of Ben Allen Road facing traffic, returning from the Middle Tennessee T. B. Hospital where she had been visiting. In walking from the hospital it was necessary, or convenient, for her to cross an over-pass railroad bridge across the main line of the L. & N. Railroad.

Before attempting to cross the bridge she stood at the corner of the bridge with her foot on it waiting for traffic to clear. Just after she had stepped onto the bridge and proceeded a few feet she was struck by a car driven by the defendant, Mrs. Bailey, and was rolled or squeezed against the bridge railing, thus suffering serious bodily injuries.

Mr. Bernard R. Jordan testified that he saw the accident and that Mrs. Head was about fifteen feet up on the bridge when the accident happened and that the right front fender of Mrs. Bailey's car struck Mrs. Head rolling her against the railing of the bridge.

Mrs. Bailey, the driver of the car, stated that she was driving about fifteen miles an hour at the time of the accident and that, as she approached the easterly end of the bridge, she could not see very far to the west end of the bridge until she got upon on it, or about in the middle thereof.

There are, in fact, two bridges. One across a spur of tracks and then as island or abutment in between, and a

second or westerly bridge where the accident happened. Mrs. Bailey admitted that she was learning to drive; that her husband had been teaching her and that she did not have a driver's license and never had had one in her life.

Referring to the accident, she testified that she saw another car approaching from the west end of the bridge and that she thought she had ample room to pass this car. She saw the plaintiff, Mrs. Head, when she was about twenty feet away from her and she thought that there was a space of about two feet between her car and Mrs. Head so that she could pass and she did not realize that she had come in contact with Mrs. Head until she heard a thump. Until then she thought that she had passed the plaintiff. She was asked:

"Q. In your mind you had cleared the approaching car and you had cleared this pedestrian until you heard a thump? A. That is right."

She further testified that when she saw plaintiff about twenty feet away, Mrs. Head had her back to her, that is, toward the driver and the car. She did not blow her horn. When asked why she didn't blow the horn she answered:

"Well, I don't know why I didn't sound my horn, I just didn't."

By The Court:

"Q. Why didn't you? A. If she had been out in the bridge, I might have. She was at the side of the bridge."

With reference to why she didn't stop when she saw Mrs. Head standing over on the right side of the bridge and saw a car coming from the opposite direction, Mrs. Bailey testified as follows:

"Q. Well, Mrs. Bailey, when you saw her, you were not running but 10 miles an hour? A. 10 or 15.

"Q. When you saw her as far as from where you are to where she is now, you had your foot brake ready to stop, and why didn't you stop? A. Well, there was eight or ten inches space there.

"Q. Oh, you say there were eight or ten inches space there and you thought you could make it? A. Yes, sir, and I did pass her.

"Q. That is the reason you didn't put on your brake and the reason you didn't stop the car, you just thought you could make it? You thought you could make it? A. Yes."

Mr. Bailey who was in the car with his wife when the accident occurred, testified:

"Q. You thought after you saw Mrs. Head there that she was going to make it? A. Yes.

"Q. You thought that your wife had room enough to pass her and pass the other driver and not hit her and hurt her? A. Yes, sir."

After the accident the Baileys reported to the police that Mr. Bailey was driving the automobile, but, after thinking about it they decided to tell the truth and say that Mrs. Bailey who had no driver's license, was driving the car.

In his testimony Mr. James R. Bailey agreed with the testimony of the engineer that the easterly bridge over the railroad tracks is 95 feet in length, the island between the two bridges is 25 feet in width, and the westerly bridge over the main tracks, where the accident occurred, is 119 feet long.

According to the witness, C. M. Perry, who measured the width of the bridge in question at about the point where the accident happened, said the bridge was 15 feet 11 inches wide. It was also shown that there are no guard railings to protect pedestrians from traffic but that numerous pedestrians do cross the bridge daily.

On cross-examination of defendant James R. Bailey it was fairly demonstrated that the driver of an automobile in the position of the defendant Mrs. Bailey would have had a clear view of Mrs. Head for a distance of from 70 to 80 feet approaching the point where she stood.

The first train from Louisville to Nashville ran on October 27, 1859. The first railroad line between Nashville and Bowling Green, Kentucky, was opened August 10, 1859. It is well established in the proof that the L. & N. Railroad was built before the Ben Allen Road was established and, thus, the bridge across the railroad was built many years after the railroad line was established, but it is not shown who built the bridge nor just when it was built, although Mr. Clark Akers, former engineer for Davidson County Highway Department, thought that this bridge was built some time around Civil War days. Further testimony indicates that it was later than this time but before 1900.

According to the testimony of B. R. Huff, an employee of the County Highway Department, the signs which

appear on either side of the Ben Allen Road bridge over the railroad tracks were erected on August 27, 1957 and said signs are inscribed "Narrow Bridge" and "Slippery When Wet". See photographs Exhibits Nos. 3 and 4 to the testimony of B. R. Huff.

## III

### Assignments of Error

There are ten assignments, two of which challenge the charge of the trial Judge with respect to the applicability of Sections 65-633 and 65-1101, T. C. A. However, we agree with counsel for the defendant railroad in the following statement which appears in his well reasoned brief and argument.

"The only real issue presented by this appeal is whether or not the motion on behalf of the defendant, Louisville and Nashville Railroad Company, should have been granted and the cases dismissed as to the Railroad Company. It is true that there are two assignments of error relating to the Trial Court's Charge (Nos. 9 and 10), but if we are correct in our challenge of those portions of the Trial Court's Charge we are correct in our contention that the cases should have been dismissed as to the defendant, Louisville and Nashville Railroad Company.

"We submit that this appeal raises the following questions;

"(1) Was the defendant Railroad Company under a legal duty, either under statutory or common law, to rebuild and widen the Ben Allen Road bridge at its own expense?

"(2) Even if the Tennessee statutes are construed as intending to place such a legal obligation upon the Railroad Company, would the application of such a statute under the vastly changed and existing circumstances be valid and constitutional?

"(3) Even if the Railroad Company is deemed to be legally chargeable with the obligation of designing and providing a bridge to carry the ever increasing motor vehicular and pedestrian traffic, can narrowness of a public way constitute, in itself, actionable negligence?

"(4) Was the negligence of the co-defendant, Mrs. Bailey, the operator of the motor vehicle which struck Mrs. Head, an independent intervening cause so as to relieve the defendant Railroad Company, in any event, as a matter of Law."

## IV

It is to be noted that the cases at bar do not involve any question of duty or negligence with respect to the maintenance of the bridge in the sense of keeping it currently in good repair. The only connection between the bridge structure itself and the injury to Mrs. Head is the alleged insufficient width of the bridge in view of the present-day motor vehicular and pedestrian traffic that it is required to carry.

Something is said by the plaintiffs about some loose planks on the bridge but there is no connection between any such defect, if it existed, and the accident with which we are concerned here.

With respect to the common law rights of the plaintiff against the Railroad Company it was sought to be shown that the public roadway was built first and was later traversed by the railroad line. However, the proof establishes beyond question that the reverse of this is true, the railroad was built about 1859 whereas the Ben Allen Road was not built until after the corner-stone laying and the construction of the Masonic Widows' and Orphans' Home, which was about 1888 or 1889. It is shown in the proof that the Ben Allen Road which led to the Masonic Widows' and Orphans' Home, now the location of the T. B. Hospital, was marked by stone pillars on the Gallatin Road with the words "Ben Allen" inscribed thereon. This road was not accepted by Davidson County as a public road until January 1923.

In City of Memphis v. Southern Ry. Co., 167 Tenn. 181, 67 S. W. (2d) 552, reference is made to Dyer County v. Chesapeake, O. & S. W. R. Co., 87 Tenn. 712, 11 S. W. 943, where it was said:

"It is a well-settled rule of the common law, resting upon the most obvious considerations, of fairness and justice, that where a new highway is made across another one already in use, the crossing must not only be made with as little injury as possible to the old way, but whatever structures may be necessary to the convenience and safety of the crossing must be erected and maintained by the person or corporation constructing and using the new way."

Also see Northern Central Railroad Company v. City of Baltimore, 46 Md. 445; 1 Thompson on Negligence, 328 and 343, and Louisville & N. R. R. Co. v. State, 40 Tenn. 523.

As was stated in Lillienkamp v. Rippetoe, 133 Tenn. 57, 179 S. W. 628, L. R. A. 1916B, 881 and in Olsen v. Sharpe, 191 Tenn. 503, 235 S. W. (2d) 11, Common Law Rights will not be abrogated by implication, and will be denied only when expressly so provided by statute which will not be construed to alter Common Law further than the act expressly declares or than is necessarily implied from the fact that it covers the whole subject.

It is insisted by plaintiffs that the defendant railroad was under a duty imposed by Tennessee Statutes to so widen the Ben Allen Road bridge as to make it safe for motor vehicles and pedestrians to travel thereon and, in effect, they say that this duty extending to plaintiff was violated because the width of the bridge was such as that two automobiles and a pedestrian could not pass simultaneously on it, or if they could it was dangerous to do so.

Sec. 65-633 T. C. A. is a reenactment of a statute passed in 1875 and provides that railroad tracks must be so constructed as not to interfere with the convenient travel of the public on the highways and to allow vehicles safely to pass over or under same.

Sec. 65-1101 T. C. A. enacted in 1889, requires railroads to furnish and keep in repair sufficient crossings on the public highways crossed by them.

Sec. 65-1107 et seq. enacted in 1921 provide for elimination of grade crossings and for construction and repair of overpasses and under-passes placing authority in the Commissioner of Highways in regard to necessity for and location of such facilities and fixes the cost thereof at 50% to be borne by the railroad and 50% by the public,

but mere maintenance cost is under a different formula as provided in Sec. 65-112.

See Nashville, C. & St. Louis Railway v. Walters, 294 U. S. 405, 55 S. Ct. 486, 79 L. Ed. 949, wherein the U. S. Supreme Court reversed the Tennessee Supreme Court's decree upholding the 1921 Act, as amended, and declaring the railroad liable for 50% of the cost of a crossing without a sufficient finding of facts to justify the imposition.

In City of Memphis v. Southern Ry. Co., 167 Tenn. 181, 67 S. W. (2d) 552, 555, it was held that where the legislative policy of the State was to require railroads to pay only part of the cost of eliminating grade-crossings, a municipality could not require the railroad to construct an underpass for a street at its own expense in the absence of a special grant of such power by the legislature. The Supreme Court in said opinion discussed Chapter 132, Public Acts of 1921, which was amended by Chapter 35, Public Acts of 1923 and Chapter 88 of Public Acts of 1925, stating that the basic principle of dividing the costs was preserved within these amendatory statutes. After considering all the questions involved and comparing the situation with conditions shown in other cases the Court concluded as follows:

"We are of the opinion that the city must bear the cost of this overhead crossing and the judgment of the court below will be modified and a judgment conforming to this opinion entered here."

The proof in the case at bar is not such as to enable us to determine with certainty whether or not the Ben Allen Road is such a public way as to be subject to the provisions of Sec. 65-1107 et seq. as a part of the State High-

ways under the jurisdiction of the Highway Commissioner.

The proof does not reveal the width of the car driven by defendant Mrs. Bailey nor the width of the other car that was passing that of Mrs. Bailey at or near the time and place of the accident. B. R. Jordan testified that an ordinary automobile is 5 feet 6 inches to 5 feet 8 inches wide. The bridge is shown to be 15 feet and 11 inches wide.

██ Furthermore, no attempt was made by plaintiffs on whom the burden of proof rested to show the extent of vehicular and pedestrian travel across this bridge relative to the size, width, number etc. of the cars, trucks and other vehicles using same. Thus, even if it be conceded that there is a continuing duty on the railroad to rebuild and/or widen overpasses and underpasses across its tracks at its own expense as vehicular traffic increases, and without being called on by public authorities to do so, (of course no such concession is made here) we do not believe that the evidence in this record will support a finding that the width of the bridge is such as to fix that duty on the defendant here as respects the Ben Allen Road bridge.

## V

Can narrowness of a public way alone constitute actionable negligence?

When passing on a question like this the Court of Appeals of Georgia, in Smith v. Colquitt County, 37 Ga. App. 222, 139 S. E. 682, at page 684 said:

"Was the county negligent as a matter of fact in maintaining the bridge at a width of only 11 feet and

5 inches? A bridge is constructed primarily for the purpose of enabling travelers along a highway to get across streams or ravines (Ellis v. Floyd County, 24 Ga. App. 717, 102 S. E. 181), and it is not essential to this purpose that a bridge should be so constructed as to permit vehicles traveling in opposite directions to be upon the bridge simultaneously and to pass each other thereon. While it may facilitate travel for the county to construct a bridge of such a width as to permit the passing of meeting vehicles, it is not necessary that a bridge of such a width be constructed in order to afford a vehicular traveler a safe and convenient means of crossing over the bridge. A bridge so narrowly constructed as to prevent the passing of meeting vehicles thereon is therefore not a defective bridge.''

In 33 Cyc. page 276, it is said:

''The duty of a Railroad Company with regard to the maintenance and repair of bridges at crossings is not, however, any greater than that of the public authorities charged with the same duty as to other bridges along the highway.''

Under the title of Bridges, 11 C. J. S., sec. 73, p. 1110, we find this statement:

''With regard to the size and stability of the structure of a public bridge it may be said that it should be of sufficient width to accomodate public travel, and the passage of all vehicles or machinery usually drawn on the highway, although as a rule bridges need not be of any particular style, shape, width, or construction, nor necessarily of a width sufficient

to permit two vehicles to pass each other on the bridge."

The proof showed that Davidson County maintains some bridges 15 feet wide or less which is at least 11 inches narrower than the one in question here.

## VI

But even if we should find that in the circumstances shown in this record the railroad owed a duty to the public, including plaintiffs, to widen the bridge at its own expense and failed to perform that duty (which we do not find) we think issue (4), p. 7 [332 S. W. (2d) 686], hereinabove, is determinative of this case. That is, was the negligence of Mrs. Bailey an independent, intervening cause so as to release the railroad as a matter of law?

█ The applicable rule in this state was stated as follows in Moyers v. Ogle, 24 Tenn. App. 682, 148 S. W. (2d) 637, 639;

"Attempts to distinguish between proximate cause and as independent intervening cause, often a closely-drawn issue, have been the cause of much perplexity, but it is quite generally held that one who did nothing more than furnish the condition or give rise to the occasion by which an injury was made possible is not liable if there intervenes between such prior act creating the condition and the injury a distinct and unrelated but efficient cause of the injury. Washington v. Baltimore etc. R. Co. 17 W. Va. 190, 196; Eberhardt v. Glasgow Mut. Tel. Ass'n, 91 Kan. 763, 765, 139 P. 416; Williams v. Weidman, 135 Mich. 444, 97 N. W. 966, 106 Am. St. Rep. 400; Alabama Power Co. v. Cooper, 229 Ala. 318, 156 So.

854; Hammett v. Birmingham Railway etc. Co., 202 Ala. 520, 81 So. 22; Louisville & Nashville Railroad Co. v. Maddox, 236 Ala. 594, 183 So. 849, 118 A. L. R. 1332.

"If an independent negligent act sets into operation the circumstances which result in injury because of the prior dangerous condition, such subsequent act is the proximate cause of the resulting injury. Walter v. Denver, etc., L. Co., 12 Colo. App. 145, 54 P. 960; Steenbock v. Omaha Country Club, 110 Neb. 794, 195 N. W. 117; Willis v. Armstrong County, 183 Pa. 184, 38 A. 621; St. Louis South Western R. Co. v. Pool, Tex. Civ. App., 135 S. W. 641, 647; Smith v. Texas, etc., R. C., 24 Tex. Civ. App. 92, 58 S. W. 151; Elliott v. Allegheny County Light Co., 204 Pa. 568, 54 A. 278."

■ In Clayborn v. Tennessee Elec. Power Co., 20 Tenn. App. 574, 101 S. W. (2d) 492, 497, it was held as follows:

"The negligent act of Eller in driving upon the shoulder of the highway in the manner and under the circumstances shown in the record was, we think, the proximate cause of the collision between his automobile and defendant's pole and the resultant injuries to the plaintiff.

" 'Where two distinct causes, unrelated in operation, contribute to an injury, one of them being a direct cause and the other merely furnishing the condition or giving rise to the occasion by which the injury was made possible, the former will alone be regarded as responsible for the result.' 62 C. J. p. 1127 sec. 40."

In Nashville C. & St. L. Railroad v. Harrell, 21 Tenn. App. 353, 110 S. W. (2d) 1032, it was held than an intervening act of a child may be the responsible cause of his own injuries, although the child could not be held contributorily negligent, and when the facts are fairly incontrovertible, the question of proximate or intervening cause is for the court.

It was also said that where two distinct successive causes unrelated in their operation join to produce a given injury, one of them is the proximate and the other the remote cause, and the Court must regard the proximate as the efficient and consequent cause, and disregard the remote cause.

In Moody v. Gulf Refining Co., 142 Tenn. 280, at page 291, 218 S. W. 817, 819, 8 A. L. R. 1243, the Supreme Court in quoting from a federal case, Kreigh v. Westinghouse, 8 Cir., 152 F. 120, 11 L. R. A., N. S., 684, stated as follows:

"In Stone v. Boston & A. R. Co., 171 Mass. 536, 51 N. E. 1, 41 L. R. A. 794, it was held that the negligence of a railroad company in storing oil upon its station platform, and in permitting it to remain there in violation of statute, was not the proximate cause of damage by a fire which was started by the careless dropping of a match by a teamster who came to the platform to deliver goods, and who was in no sense a servant, agent, or guest of the railroad company.

"In that case and in the case of Laidlaw v. Sage, 158 N. Y. 73, 52 N. E. 679, 44 L. R. A. 216, it was held that the question was not one for the jury, but that as a matter of law the defendant's negligence

could not be said to be the proximate cause of the plaintiff's injury.

"In Fanning v. J. G. White & Co., 148 N. C. 541, 62 S. E. 734, the court held that, assuming the defendant who was engaged in construction work, was guilty of negligence in storing a large quantity of dynamite in an old shanty on the railroad right of way, the plaintiff could not recover for an injury sustained by an explosion of the dynamite as the result of the plaintiff's companion shooting into the shanty, though ignorant of the presence of the explosive. The court was of the opinion that the shooting into the dynamite by the plaintiff's companion was the proximate cause of the explosion and injury which resulted therefrom."

On page 293 of 142 Tenn., on page 820 of 218 S. W. the Court stated that even if it were conceded that the defendant was guilty of negligence, still such negligence was not the proximate cause of the fire which destroyed the property of plaintiffs, said fire being the direct and proximate result of the independent intervening act of the boy in throwing lighted matches into gasoline during the absence of defendant's employee, hence, the defendant Gulf Refining Company was absolved of responsibility in that case.

Stafford v. Consolidated Bus Lines, 179 Tenn. 185, 164 S. W. (2d) 15, is a case where a ten year old girl ran from behind a bus that had stopped to take on passengers, and was struck by a passing automobile.

Although it was found that the bus, in violation of statute, had stopped partially on the paved portion of the road leaving less than 15 feet of highway unob-

structed, it was held that the negligent act of the child was an independent intervening act which relieved the defendant bus company of liability.

The trial Court directed a verdict for defendant. The Court of Appeals reversed and remanded the cause for a new trial holding that the question of intervening cause was one for the jury. The Supreme Court held with the trial Court that where the facts are fairly uncontroverted the question is for the Court.

In Ford Motor Co. v. Wagoner, 183 Tenn. 392, 192 S. W. (2d) 840, 852, 164 A. L. R. 364, Judge Chambliss wrote an exhaustive opinion discussing the question of independent intervening cause and the authorities on that subject.

In the trial Court there was a judgment for the defendant. The Court of Appeals reversed and remanded, going into the question of intervening cause very thoroughly. However, the Supreme Court reversed the Court of Appeals, stating, among other things [183 Tenn. 392, 192 S. W. (2d) 843]:

" 'The principle that to fix liability for injuries brought about through a complicated state of facts, the last conscious agency must be sought; and the consideration that if, between the agency setting at work the mischief and the actual mischief done, there intervenes a conscious agency, which might or should have averted mischief, the original wrongdoer ceases to be liable, afford the clues for unravelling the cases.'

"The principle which governs and limits liability in the instant case could hardly be more clearly

stated than in the foregoing paragraphs. Norman plainly became, under the proof, an intervening 'conscious agency, which might or should have averted mischief,' and, therefore, the alleged 'original wrongdoer ceased to be liable.' He 'destroyed by his negligent act' of omission 'the causal connection between the first person concerned (here Ford Company) and the ultimate injury sustained.'

"The rule thus stated is so obviously well founded in principle and reason that it is not necessary to lengthen this opinion by extended references to other authorities. However, holdings of this Court are in accord. In the recent case of Stafford v. Consolidated Bus Lines, 179 Tenn. 185, 164 S. W. (2d) 15, Mr. Justice McKinney reviewed our cases, including Moody v. Gulf Refining Co., 142 Tenn. 280, 218 S. W. 817, 8 A. L. R. 1243, and approved recognition therein of the acquitting effect of an independent intervening cause upon the liability of the original wrongdoer."

The opinion further observed (183 Tenn. at page 404, 192 S. W. (2d) at page 845):

"We do not overlook the question whether or not we have presented on this point a case for submission to a jury."

In Carney v. Goodman, 38 Tenn. App. 55, 270 S. W. (2d) 572, 576, Judge Felts speaking for the Court, dealt with this question, stating:

"The test of whether a case falls within one line or the other of these cases seems to be this: Did the driver running into the standing vehicle see it

in time to enable him, by use of due care, to avoid the collision? If he did not, his negligence is merely a contributory cause; if he did, his negligence is the proximate cause. Kline v. Moyer, 1937, 325 Pa. 357, 191 A. 43, 111 A. L. R. 406. In the case just cited the Pennsylvania Supreme Court laid down these two rules:

" '(1) Where a second actor has become aware of the existence of a potential danger created by the negligence of an original tort-feasor, and thereafter, by an independent act of negligence, brings about an accident, the first tort-feasor is relieved of liability, because the condition created by him was merely a circumstance of the accident and not its proximate cause.' 325 Pa. 357, 191 A. 46, 111 A. L. R. 410-411."

Again in Friendship Telephone Co. v. Russom, 43 Tenn. App. 441, 309 S. W. (2d) 416, 421, Judge Felts speaking for the Court, and with characteristic thoroughness, again dealt with this question of intervening cause. As pointed out in the opinion:

"Some cases do draw a distinction between the 'cause' of harm and the 'condition' in which the harm happened. It is said that if defendant's act created only a passive, static condition which made the harm possible, he is not liable.

\* \* \* \* \* \*

" 'So far as the distinction has any validity at all, it must refer to the type of case where the forces set in operation by the defendant have come to rest in a position of apparent safety, and some new force intervenes. But even in such cases, it is not the dis-

tinction between "cause" and "condition" which is important, but the nature of the risk and the character of the intervening cause.' (Prosser on Torts (2nd Ed.) 225)."

■ In the case at bar, the driver, Mrs. Bailey, by her own testimony which is not contradicted, saw plaintiff, Mrs. Head, on the bridge in ample time to have stopped or, in the exercise of due care, to have avoided striking her.

As stated in Carney v. Goodman, supra, if this is true, then her negligence was the proximate cause of the accident.

We think this case falls within the distinction drawn in the quotation from Friendship Tel. Co. v. Russom, supra, in that, at most, defendant maintained a passive, static condition which made the harm possible but a new and independent force intervened to bring about and proximately cause the injuries complained of.

In Louisville & N. R. R. Co. v. Maddox, 236 Ala. 594, 183 So. 849, 118 A. L. R. 1318, it was said where one act creates a condition which is subsequently acted upon by another independent and distinct agency to produce the injury, the original act is the remote and not the proximate cause of the injury.

Thus, we are of opinion that the negligent conduct of Mrs. Bailey, the driver of the automobile, under the circumstances shown by the record herein, was an independent intervening proximate cause of this unfortunate accident and that the defendant Railroad Company is not liable.

It results that the assignments of error are sustained, the judgment of the trial Court reversed and the cause against the Railroad dismissed.

Reversed and cause against railroad dismissed.

Felts and Hickerson, JJ., concur.