CITY OF MEMPHIS *v.* SOUTHERN RY. CO.

(*Nashville,* December Term, 1933.)

Opinion filed January 27, 1934.

WALTER CHANDLER and LONGSTREET HEISKELL, both of Memphis, for appellant.

EWING, KING & KING and CARUTHERS EWING, JR., all of Memphis, for appellee.

MR. CHIEF JUSTICE GREEN delivered the opinion of the Court.

This is a controversy between the city of Memphis and the Southern Railway Company over the liability for the cost of the construction of a bridge or trestle carrying tracks of the railway company over the extension of one of the streets within that city. The trial judge apportioned the expenses between the two parties in a manner which satisfied neither, and both have appealed. Certain

constitutional questions are raised, and the case has been brought directly to this court.

Prior to August 30, 1921, Linden avenue ran up to the right of way of the Southern Railway on either side. The tracks of the railway at this point rested on a trestle, and the trestle was so built as to prevent the extension under it of a street of proper width at suitable grade.

On the date last mentioned an ordinance was passed by the city for the improvement of Linden avenue, connecting the segments of that street divided as stated, and requiring the railway company to carry its tracks over the intersection thus formed, by a proper structure and at its own expense. On July 13, 1922, the city filed a petition in the court below to condemn a right of way for Linden avenue across the right of way of the railway company at the point mentioned. The railway company filed an answer denying the city's right to condemn and the city's right to require the railway company, at its own expense, to construct the overhead bridge that this improvement would require.

Pending this litigation, the city and the railway company entered into an agreement whereby the overhead bridge was built and certain grading, both for the extended street and the relaid tracks, was done. The expense of this work was shared between the city and the railway company upon a stipulation, in substance, that the ultimate expense of the whole work should be adjudged according to the legal rights of the parties as finally determined in the present suit. Each of the parties is accordingly seeking herein a judgment over against the other.

We are therefore called on to decide whether the city had a right to extend Linden avenue across the right of

way of the railway company at this point, and, if so, whether the city had a right to require the railway company to bear the expense, or any part of the expense, necessary to this undertaking.

The first proposition advanced by the railway company is that its property at this intersection was already devoted to a public use, and that the city was without power, in the absence of special statutory authority, to appropriate such property for another public use, under the law of eminent domain. Special statutory authority is not claimed by the city. A general power of eminent domain to take private property for municipal or public use is conferred upon the city of Memphis by several statutes. Chapter 11, Acts of 1879; chapter 163, Acts of 1889; chapter 341, Acts of 1907. The city is likewise authorized by statute to regulate the use of its streets, to open and widen streets, and to lay off new streets, and to regulate the laying of railroad tracks and the passage of railroad cars through the city. Klewer's Digest, sections 445, 580.

The right to establish a highway across a railroad is quite commonly held to be conferred on a municipality by a general grant of power to lay out, open, and extend streets and highways and to condemn land for that object, provided such a taking will not destroy the use of the land for railroad purposes. An incidental interference with railroad use will not defeat this right of the city. If, however, the projection or extension of the highway across the railroad property will destroy or render very difficult its use by the railroad company, the taking will not be permitted except upon specific legislative authority. Lewis on Eminent Domain, section 276; Elliott on Railroads (3 Ed.), section 1215; 13 R. C. L.,

44; 20 C. J., 611, and see cases collected in a note, 24 L. R. A. (N. S.), 1213.

The principle just noted finds expression in many decisions of this court.

"Where property has been legally condemned or acquired by purchase for a public use, and has been or is about to be appropriated for such use, it cannot be taken for another public use which will totally destroy or materially impair or interfere with the former use, unless the intention of the Legislature that it should be so taken has been manifested in express terms or by necessary implication." *Railroad Co.* v. *Cemetery Co.*, 116 Tenn., 400,. 94 S. W., 69, 71; *Southern Railroad* v. *Memphis*, 126 Tenn., 267, 148 S. W., 662, 41 L. R. A. (N. S.), 828, Ann. Cas., 1913E, 153; *Mobile & O. Railroad* v. *Mayor and Aldermen of Union City*, 137 Tenn., 491, 194 S. W., 572; *Williamson County* v. *Turnpike Co.*, 143 Tenn., 628, 228 S. W., 714.

█ It requires no argument to show that the taking of the railway company's property at this point for the extension of Linden avenue across the railroad right of way was a taking for a use wholly inconsistent with the use of the right of way for railroad purposes. The clearance required by traffic over the street made it necessary to destroy the structure carrying the tracks of the railway company at this intersection. Street use and railroad use at this point, in view of the street level adopted by the city of Memphis, were absolutely incompatible without a reconstruction of the railway company's property.

We think it must follow that the city, proceeding alone under a general power of eminent domain, was not entitled to a decree of condemnation of the railway com-

pany's property at this point for the intersection contemplated. The city must resort to its police power, in addition to its power of eminent domain, if its contentions in this suit are to be maintained.

The determinative question, therefore, is whether the city of Memphis was endowed with police power adequate to justify the ordinance requiring the removal of the old bridge and forcing the railway company to abandon its property or to construct a new bridge at its own expense.

The police power of a city is quite broad under general authority commonly granted in municipal charters, but there are well-established limitations upon this power. Among other things, it is uniformly held that a municipality may not pass an ordinance which conflicts with a statute, or indeed with a legislative policy, of the state.

This limitation was well expressed in *Long* v. *Taxing District,* 75 Tenn. (7 Lea), 134, 40 Am. Rep., 55, as follows:

"No implied power to pass by-laws, and no express general grant of the power, can authorize a by-law which conflicts either with the national or State Constitution, or with the statutes of the State, or with the general principles of the common law adopted or in force in the State. Ordinances must be consistent with public legislative policy, may regulate not restrain trade, and must not contravene common right."

The language quoted was based on previous decisions of this court cited in *Long* v. *Taxing District,* and the rule embodied in the quotation has since been frequently approved. *Katzenberger* v. *Lawo,* 90 Tenn., 241, 16 S. W., 611, 13 L. R. A., 185, 25 Am. St. Rep., 681; *Jones* v. *Nashville,* 109 Tenn., 557, 72 S. W., 985; *Farmer* v. *Nashville,*

127 Tenn., 515, 156 S. W., 189, 45 L. R. A. (N. S.), 240; *State ex rel.* v. *Bates,* 161 Tenn., 211, 30 S. W. (2d), 248.

■ Elimination of crossings at grade of public roads and railroads is a matter that has received much consideration by courts and by Legislatures of recent years. Whether, under statutes or under the common law, the state was entitled to require a railroad company, at its own expense, to obviate such crossing by carrying its tracks over or under the public highway, is a question that has been in frequent controversy. Such power of the state has usually been sustained. In most cases this power of the state has been referred to some statute. In a few cases it has been referred to the common law. Where a power like this exists in the state, a municipal ordinance passed by way of exercise of the power is of course consistent with the law of the state and unobjectionable, if enacted pursuant to the general or special authority contained in the municipal charter. Nor do the cases seem to take any distinction between the power of the state or municipality in the regulation of the crossing by railroad tracks of established highways and projected highways.

It is not necessary to determine at this time what may formerly have been the common law in Tennessee. By chapter 132 of the Public Acts of 1921, the Legislature provided a scheme for the elimination of railroad grade crossings over the public highways of the state. Without going into the details of the statute, it was enacted that the expense of constructing an overpass or an underpass at such crossings should be divided between the railroad company and the state. This act was amended in certain particulars by chapter 35 of the Public Acts of 1923 and chapter 88 of the Public Acts of 1925, but the basic prin-

ciple of dividing the cost was preserved in these amendatory statutes. Code, section 2638 et seq.

The ordinance herein relied on by the city of Memphis was not enacted until several months after the passage of the Public Act of 1921. At the time of the passage of this ordinance, the policy of the state had been definitely settled, and the Legislature had determined that the railroad companies were not to be onerated with the entire expense incident to the elimination of grade crossings. Since this declaration of legislative policy, in the absence of special authority, we are not able to conclude that a municipal corporation, endowed merely with general power to regulate the use of its streets and the operation of railroad trains within its limits, can require of a railroad company at its sole expense such an undertaking as is herein contemplated.

The separation of grades at the crossing of a public road and a railroad is always an expensive proceeding. It involves either a considerable fill or a considerable excavation, often both, an overhead bridge, and approaches. The expense is greatly enhanced when there is such an undertaking in a populous city. In the latter case the compensatory outlay for the approaches is usually staggering. Since the state has so restricted its immediate power in the premises, when proceeding through its immediate agents and in the maintenance of its own highways, it cannot be conceived that the state would delegate unlimited power in this respect to a subordinate governmental agency except by plain language. We think no such unlimited power can be drawn by implication from general provisions in a municipal charter.

Reference to acts of the Legislature indicates that body has not supposed itself to have granted unlimited

powers to Memphis with respect to the separation of grades at crossings between streets and railroad tracks in that city.

Chapter 184 of the Acts of 1907 undertook to amend the charter of Memphis and provide a new scheme of government. That act was passed, not by way of restriction, but to enlarge the powers of the municipality. Such extraordinary powers were conferred upon the city as to require this court in *Malone* v. *Williams*, 118 Tenn., 390, 103 S. W., 798, 121 Am. St. Rep., 1002, to declare the act unconstitutional. One section of the act (article 3, section 12) authorized the city to require railroad companies "which may hereafter construct railroad tracks across the streets of the city of Memphis to construct and maintain viaducts, or overhead bridges, or tunnels under the streets at such points of intersection." The act further empowered the city, "where railroad tracks now cross the streets, alleys, or highways of the city of Memphis, to pass such reasonable ordinances as may be necessary for the convenience and protection of the public using such streets, alleys, and highways." This section of the act of 1907 was not considered by the court in *Malone* v. *Williams*, and is merely mentioned by way of showing that the General Assembly considered special authority necessary to enable the city to require the separation of grades at the crossings of its streets by railroad tracks that might be thereafter laid.

Counsel refer to a number of special acts of the Legislature authorizing the city of Memphis to compel the construction of an overpass or an underpass at particular crossings upon terms named. And by chapter 419 of the Private Acts of 1925 the city was empowered "to compel railroads to separate the grade of their tracks

from that of streets and highways when crossing at grade, upon such terms and upon such equitable division of cost as may be agreed upon by the City and Railroads; or if the city and railroads fail to agree, then upon such equitable and reasonable terms as the city may prescribe.''

True, chapter 419 of the Private Acts of 1925 contains a proviso that the grant of power just set out ''shall not be held to take away, limit or abridge any power now possessed by the city to compel railroads to separate the grade of their tracks from that of streets and highways.'' Some of the special acts referred to perhaps contain a similar proviso. All this legislation, however, goes to show that neither the municipal authorities nor the Legislature believed that there existed in the city of Memphis the power now claimed for it herein.

We are referred by counsel for the city to a number of the decisions of this court which are thought to sustain their contentions. We find none of these decisions controlling. Most of them came prior to chapter 132 of the Acts of 1921, and they rest upon different facts.

L. & N. R. R. Co. v. State, 40 Tenn. (3 Head), 523, 75 Am. Dec., 778, and Dyer County v. Railroad, 87 Tenn., 712, 11 S. W., 943, were cases in which the railroad companies, in laying their tracks, excavated cuts across established highways. The railroad companies were required to maintain overhead bridges at their own expense to permit the passage of the highways over such cuts. These cases were based on rules of the common law that, where a new highway is made across another one already in use, the crossing must not only be made with as little injury as possible to the old way, but whatever structures may be necessary to the convenience and safe-

ty of the crossing must be erected and maintained by the person or corporation constructing and using the new way.

In *City of Harriman* v. *Railroad,* 111 Tenn., 538, 82 S. W., 213, 214, the city of Harriman was specially empowered by its charter ''to require the railroad companies to construct at their own expense such bridges and approaches, tunnels, or other conveniences at public crossings, and such viaducts and their approaches over their tracks where the same cross or extend along public highways or streets . . . as the city council may deem necessary.''

The charter of the city of Chattanooga contains a special provision similar to the provision quoted from the Harriman charter, and *Chattanooga* v. *Railroad,* 128 Tenn., 399, 161 S. W., 1000, and *Cincinnati, etc., Ry. Co.* v. *City of Chattanooga* (Tenn. Sup.), 64 S. W. (2d), 196, are not in point.

In *City of Knoxville* v. *Southern Ry. Co.,* 149 Tenn., 291, 258 S. W., 143, the question as to whether the city of Knoxville, under general charter powers, had authority to require the railway company to build and maintain a viaduct over a crossing, was specially reserved.

In *Nash., C. & St. L. Ry.* v. *Drainage District,* 149 Tenn., 490, 261 S. W., 975, the statute under which the drainage district was organized required that the ditches or drains cross railroad tracks at the place of the natural waterway across such rights of way, unless the railroad company should have provided another place for the flow of water, or unless another place was agreed upon. The statute also provided that the ditches or drains be constructed according to plans adopted. If, therefore, the existing opening, or the opening provided by the

railroad company, for the flow of water under its tracks, was not sufficient to permit the passage of the ditch or drain under its tracks, it necessarily followed that the duty of reconstruction of the structure carrying its tracks rested upon the railroad company. The bridge was owned by the railroad company subject to the superior right of the public to deepen or widen the water course. The drainage district was required by the statute to carry a ditch of fixed dimensions under the railroad track. No such requirement was imposed upon the city with reference to carrying Linden avenue under defendant's tracks.

Certain minor questions are raised by counsel which, although considered, do not require discussion. We are of opinion that the city must bear the cost of this overhead crossing, and the judgment of the court below will be modified and a judgment conforming to this opinion entered here.