### 39855. GEORGIA SOUTHERN & FLORIDA RAILWAY COMPANY v. CITY OF WARNER ROBINS.

DECIDED FEBRUARY 8, 1963—REHEARING DENIED
FEBRUARY 20, 1963.

*Bloch, Hall, Groover & Hawkins, Nunn, Aultman, Hulbert & Buice,* for plaintiff in error.

*R. T. Spencer,* contra.

BELL, Judge. The plaintiff in error seriously questions the authority of the City of Warner Robins to take property already dedicated to a public use such as the railroad property which the city is seeking to condemn through this action. However, from our review of the cases it appears clear that a municipality may be given the right to condemn so as to subject previously dedicated property to a second public use. *Town of Poulan v. Atlantic C. L. R. Co.,* 123 Ga. 605 (51 SE 657). This power may be in express terms or it may be implied. For it to be implied it is first necessary that there be conferred on the municipality the general power of condemnation for the purpose for which the taking is desired.

The statute creating a charter for the City of Warner Robins (Ga. L. 1943, pp. 1624-1629, § 10) granted to the mayor and councilmen as the legislative department of the city government full power and authority to condemn property either within or without the corporate limits necessary for any public purpose in accordance with the method and procedure of condemnation of property provided by the laws of Georgia. Section 17 of the charter grants to the legislative department of the city ". . . full power and direction [sic] control over all streets, alleys, sidewalks, and street crossings and shall direct the mode, manner, and style in which they shall be opened or closed or constructed or maintained." In addition by Section 19 of the charter, it was provided that the governing authority "shall have power and authority to order the construction, improvements and maintenance of all public works, and without limiting this generality . . . the care and improvement of . . . the streets and bridges . . . which the corporation may determine to . . . operate for . . . users."

Although there is nothing in the city's charter which ex-

pressly grants to it the authority to condemn property already dedicated to the public use, it is quite apparent that the power of condemnation given by the General Assembly to the governing authority of the City of Warner Robins is general in nature and clearly embraces the power to condemn for the purpose of exercising control over streets, street crossings, and the opening of streets. From this general power the authority to condemn property previously dedicated to the public use may be implied if the other requirements essential to the utilization of the implication are found to exist.

This situation in our case brings into play the principles stated by the Supreme Court in the case of *City Council of Augusta v. Georgia R. &c. Co.*, 98 Ga. 161 (26 SE 499), where it is pronounced that a general power conferred by a legislative enactment upon a municipal corporation to open new streets, change, widen or extend streets already open within the corporate limits does not expressly confer upon the municipality the authority to take and use for this purpose property already in use by a railroad company for public purposes. However, the case goes further and holds that whether the authority arises by necessary implication is to be determined by applying the statute to the subject matter, and the test is whether or not both uses may reasonably stand together, in which case the authority to condemn may be implied. The criterion to be applied in judging the test is stated in *City Council of Augusta*, supra, p. 166, as follows: "If the conditions are such that they may be reasonably made to consist, there is no such encroachment upon the prior public use as even appreciably to impair, much less extinguish it; and therefore, even though some slight inconvenience may result to the prior occupant, there is no reason why a second public use, when granted even in general terms, may not be held to confer upon the public authorities the right in such manner to exercise it. A different result follows, however, when the enjoyment of the second use involves the practical extinguishment of the former, or renders its exercise so extremely inconvenient and hazardous as practically to destroy its value. In such a case, the right to enjoy the second use must rest upon express legislative authority, and will not be implied. The exercise of

the second use, under such circumstances, would amount to a forfeiture of the first."

By a plat attached as an exhibit in this proceeding, it appears that the portion of the property of the railroad sought to be condemned by the City of Warner Robins does not include buildings or other improvements to an extent sufficient as a matter of law to authorize a court to conclude that the exercise of the power by the city would practically extinguish the railroad's public use of the property, or render the exercise of the use of the property by the railroad so "extremely inconvenient and hazardous as to practically destroy its value."

In another case where the Supreme Court dealt with a similar problem, but where the apparent facts of the proposed second public use were more pronounced in their deleterious effects than here, as there a coal chute and a steep grade of visual and monetary importance were involved, the court, after citing with reapproval the tests enunciated in *City Council of Augusta,* supra, held ". . . that whether or not the making of the crossing will create another use which is inconsistent with the use to which the strip of land involved has already been appropriated should be determined under evidence properly submitted at a trial of the case upon its merits." *Georgia Northern R. Co. v. City of Moultrie,* 163 Ga. 513, 519, 520 (136 SE 415).

We, therefore, conclude that where a condemnor, under the doctrine of implied rather than express authority, seeks to take the property of another which previously has been dedicated to a public use, the condemnee as a matter of law has the right to offer evidence to show that the taking would practically extinguish the former use or render its exercise so extremely inconvenient and hazardous as practically to destroy its value.

It necessarily follows that the right in the condemnee to present evidence showing that the enjoyment of the second use involves the practical extinguishment of the present use or would render the present use so extremely inconvenient and hazardous as practically to destroy its value, can only be exercised where the second taking is pursued through procedures of eminent domain which do not permit a subjection of the property to the second use before the issue can be finally determined. The act

of 1957 (Ga. L. 1957, pp. 387-397) does not meet this test. While the act of 1957 does provide for appeals by the condemnee with the same right to move for a new trial and file a bill of exceptions as in other cases at law, the act specifically states that ". . . The entering of said appeal and the proceedings thereon shall not hinder or delay in any way the condemning body's work or the progress thereof." *Code Ann.* § 36-614a. Thus, under the 1957 act, the condemning body, after the required preliminary procedures, may take the property, use it, and proceed to change it to a degree that irrevocable harm could be done before the issue of incompatible use was determined.

By clear and concise statements in the 1957 act the General Assembly expressed the legislative intent to be that the 1957 act did not repeal any condemnation laws then extant, but that the 1957 act was merely a supplementary and cumulative authority to the existing condemnation provisions. Thus it is apparent that the legislative intent in enacting the act of 1957 was that it was not intended for use by condemnors in those cases where the property to be condemned previously had been dedicated to a public use. To find the legislative intent to be otherwise would be to accord to the 1957 act a repealing provision (as to the rights of condemnees whose property previously had·been dedicated to a public use) which effect was expressly negated in the clear language of the act itself.

The logical conclusion is that, in absence of express authority, the condemning procedure authorized by the act of 1957 is not available for use by condemnors who seek to take property previously dedicated to a public use.

As this condemnation action was brought under the act of 1957 which is not available to the condemnor for the taking of the particular type of property sought to be condemned, the trial court erred in overruling the general demurrers to the petition.

*Judgment reversed. Carlisle, P. J., and Hall, J., concur.*