# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON

THE TOWN OF COLLIERVILLE,  )
TENNESSEE, SCHILLING, INC.,  )
JANE PORTER FEILD, and  )
JOEL H. PORTER,  )
        )
        Plaintiffs/Appellees,  ) Shelby Circuit Nos. 84436 & 85824
        )
VS.  ) Appeal No. 02A01-9706-CV-00134
        )
NORFOLK SOUTHERN RAILWAY  )
COMPANY,  )
        )
        Defendant/Appellant.  )

**FILED**

March 6, 1998

**Cecil Crowson, Jr.**
Appellate Court Clerk

APPEAL FROM THE CIRCUIT COURT OF SHELBY COUNTY
AT MEMPHIS, TENNESSEE
THE HONORABLE JOHN R. McCARROLL, JUDGE

**RALPH T. GIBSON**
**EVERETT B. GIBSON LAW FIRM**
Memphis, Tennessee
Attorney for Appellant

**HOMER B. BRANAN, III**
**BRIAN L. KUHN**
**HAROLD W. FONVILLE, II**
**FARRIS, MATTHEWS, GILMAN,**
**BRANAN & HELLEN**, P.L.C.
Memphis, Tennessee
Attorneys for Appellee Town of Collierville, Tennessee

**JOHN McQUISTON, II**
**EVANS & PETREE**
Memphis, Tennessee
Attorney for Appellee Schilling, Inc.

**C. THOMAS CATES**
**BURCH, PORTER & JOHNSON, PLLC**
Memphis, Tennessee
Attorney for Appellees Jane Porter Feild and Joel H. Porter

**REVERSED AND REMANDED**

                        **ALAN E. HIGHERS, J.**

**CONCUR:**

**W. FRANK CRAWFORD, P.J., W.S.**

**DAVID R. FARMER, J.**

Defendant Norfolk Southern Railway Company appeals the trial court's orders of possession entered in favor of Plaintiff/Appellee Town of Collierville in two eminent domain cases. In entering its orders of possession, the trial court ruled that, as a matter of law, the Town of Collierville had the right to condemn easements across Norfolk Southern's railroad track for the purpose of constructing two grade crossings and that Norfolk Southern was not entitled to an evidentiary hearing on the right-to-take issue. For the reasons hereinafter stated, we reverse the trial court's orders of possession and remand for further proceedings.

In January 1997, the Town of Collierville filed two petitions for condemnation[1] against Norfolk Southern and other parties in which the Town sought to condemn temporary and permanent easements across Norfolk Southern's railroad track within the Town of Collierville.[2] The Town later filed motions for issuance of immediate writs of possession pursuant to Tennessee Code Annotated section 29-17-803 (1980).[3] In support of its motions, the Town filed the affidavit of the Town's city administrator, James Lewellen, which indicated that the grade crossings were necessary to extend two of the Town's streets, Bray Station Road and Shea Road, across Norfolk Southern's railroad track. Lewellen's affidavit further averred that these crossings were necessary for the Town's future development and, specifically, for access to a planned hospital, fire station, and public school.

---

[1] The Town actually filed three such condemnation petitions; however, this appeal involves only two of the petitions.

[2] By statute, the Town of Collierville and other municipalities are "authorized and empowered to acquire by the exercise of the power of eminent domain, . . . such right-of-way, land, material, easements and rights as may be deemed necessary, suitable or desirable for the construction, reconstruction, maintenance, repair, drainage or protection of any street, road, highway, freeway or parkway." T.C.A. § 29-17-801(a)(1) (Supp. 1981).

[3] As pertinent, section 29-17-803 provides that:

> After the expiration of five (5) days from the date of the giving of [notice of the filing of a condemnation petition] if the right to take is not questioned, the condemner shall have the right to take possession of the property or property rights sought to be condemned, and if necessary to place such condemner in possession thereof, the court shall issue a writ of possession to the sheriff of the county to put the condemner in possession.

T.C.A. § 29-17-803(c) (1980).

Norfolk Southern responded to the motions by filing a written objection in which it argued, inter alia, that the proposed grade crossings were unnecessary, redundant of other nearby crossings, and dangerous to the public. Norfolk Southern's objection further argued that placing the "redundant and hazardous grade crossings over [its] right of way [would] materially interfere with [its] use of [the] right of way." Norfolk Southern requested the trial court to delay a hearing on the motions until it could complete discovery. In support of its written objection, Norfolk Southern filed the affidavit and report of a licensed professional engineer which addressed some of Norfolk Southern's safety concerns with the Town's locations of the proposed grade crossings.

The trial court conducted a hearing on the Town's motions at which the court considered the parties' pleadings and affidavits. At the hearing's conclusion, the trial court entered orders granting the writs of possession in which the court ruled that (1) the Town had the right to condemn the property in question; (2) the takings were for a proper public use; (3) the takings did not destroy or render extremely difficult the use of the land for railroad purposes; and (4) the advisability of the takings was not an issue for the court. The trial court certified its orders granting the writs of possession as final judgments pursuant to rule 54.02 of the Tennessee Rules of Civil Procedure. The trial court also entered an order consolidating the cases for purposes of trial and appeal.

As an initial matter, we find it necessary to examine the "avenue" by which this appeal is being pursued before this court. See, e.g., Ridley v. Ridley, No. 03A01-9708-GS-00350, 1998 WL 8449, at *1 (Tenn. App. Jan. 13, 1998). Having done so, we conclude that the trial court's orders are not reviewable under rule 54.02, despite the trial court's certification to that effect, because the orders do not dispose of an entire claim or party as required by that rule.

Rule 54.02 provides that

> when more than one claim for relief is present in an action, whether as a claim, counterclaim, cross-claim, or third party claim, or when multiple parties are involved, the court, whether at law or in equity, may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment. . . .

T.R.C.P. 54.02. In construing this provision, our supreme court has held that "[a]n order made final pursuant to [rule] 54.02 must be dispositive of an entire claim or party." Bayberry Assocs. v. Jones, 783 S.W.2d 553, 558 (Tenn. 1990). In doing so, the court noted that rule 54.02 certification by trial courts is improper unless the order certified could properly be viewed as a final judgment as to at least one claim or party in the lawsuit. Id. at 557 n.2.

As previously indicated, the trial court's orders determined only the issue of the Town's right to immediate possession of the easements over Norfolk Southern's railroad tracks. The orders of possession did not dispose of the Town's condemnation actions because the orders did not purport to determine all of the issues before the trial court relating to the condemnation claims, most notably the issue of any damages due Norfolk Southern. Inasmuch as the trial court's orders did not dispose of "an entire claim or party," we conclude that the orders are not reviewable under rule 54.02. Bayberry Assocs., 783 S.W.2d at 558.

Our conclusion that the subject orders are not reviewable under rule 54.02 is supported by this court's decision in Alcoa Development & Housing Authority v. Monday, 1991 WL 12291 (Tenn. App. Feb. 7, 1991). In the Alcoa case, the trial court, pursuant to rule 54.02, attempted to certify as final an order of possession which determined the Housing Authority's right to possession of the subject property but which did not dispose of all of the issues between the parties. Id., at *1. Judge McMurray, writing for the eastern section of this court, concluded that the order was not reviewable under rule 54.02. Id. He explained:

4

> This is an appeal from an order of possession in an eminent domain case. We first note that the order of the trial court disposes of only a part of the issues joined between the parties. The trial judge, in his order, attempted to make the order a final appealable order pursuant to Rule 54.02 of the Tennessee Rules of Civil Procedure. He specifically stated in his order that "the court finds and determines that there is no just reason for delay and directs that this is a final order as to the issues joined in this order." We are of the opinion that the circumstances of this case do not fall within the contemplation of Rule 54.02 of the Tennessee Rules of Civil Procedure but would be more properly addressed as an interlocutory appeal pursuant to Rule 9 of the Tennessee Rules of Appellate Procedure.

Alcoa, 1991 WL 12291, at *1; see also Crane v. Sullivan, No. 01A01-9207-CH-00287, 1993 WL 15154, at **1-2 (Tenn. App. Jan. 27, 1993) (concluding that trial court improvidently certified order as final judgment pursuant to rule 54.02 where order granted injunctive relief but reserved ruling on other matters contained in pleadings, including determination of boundary line and award of damages).

Although the Alcoa court concluded that the order of possession was not reviewable pursuant to rule 54.02, the court found the case suitable for rule 9 application and, thus, elected to review the case as an interlocutory appeal. Alcoa, 1991 WL 12291, at *1; T.R.A.P. 9. In doing so, the court waived any requirements of rule 9 with which the appellant had not complied. Alcoa, 1991 WL 12291, at *1; see T.R.A.P. 2 (providing that, with certain exceptions, this court may, "[f]or good cause, including the interest of expediting decision upon any matter, . . . suspend the requirements or provisions of any of these rules in a particular case on motion of a party or on [the court's] motion and may order proceedings in accordance with its discretion"). In the interest of judicial economy, we similarly elect to treat the subject appeal as an interlocutory appeal by permission pursuant to rule 9. See also Munke v. Munke, 882 S.W.2d 803, 805 (Tenn. App. 1994); B.L. Hodge Co. v. Roxco, Ltd., No. 03A01-9704-CH-00144, 1997 WL 644960, at *1 n.3 (Tenn. App. Oct. 16, 1997); T.R.A.P. 9.

Having elected to review this appeal under rule 9, we now turn to the merits of the single issue presented in this case, that of whether Norfolk Southern was entitled to an evidentiary hearing on the Town's right to take the property in question. The parties agree

5

that the standard regarding the Town's right of condemnation is set forth in City of Memphis v. Southern Railway Co., 67 S.W.2d 552 (Tenn. 1934), wherein our supreme court stated that:

> The right to establish a highway across a railroad is quite commonly held to be conferred on a municipality by a general grant of power to lay out, open, and extend streets and highways and to condemn land for that object, provided such a taking will not destroy the use of the land for railroad purposes. An incidental interference with railroad use will not defeat this right of the city. If, however, the projection or extension of the highway across the railroad property will destroy or render very difficult its use by the railroad company, the taking will not be permitted except upon specific legislative authority. . . .
>
> . . . .
>
> "Where property has been legally condemned or acquired by purchase for a public use, and has been or is about to be appropriated for such use, it cannot be taken for another public use which will totally destroy or materially impair or interfere with the former use, unless the intention of the Legislature that it should be so taken has been manifested in express terms or by necessary implication."

City of Memphis, 67 S.W.2d at 553 (emphases added) (quoting Memphis State Line R.R. Co. v. Forest Hill Cemetery Co., 94 S.W. 69, 71 (Tenn. 1906)).

The foregoing standard permits the Town of Collierville to condemn the easements across Norfolk Southern's right-of-way unless such condemnation will destroy, render very difficult, or materially impair or interfere with Norfolk Southern's prior use of the right-of-way. City of Memphis, 67 S.W.2d at 553; accord State of Georgia v. City of Chattanooga, 4 Tenn. App. 674, 680-81 (1927) ("[U]nder the well-settled law of this State, the city has the power to condemn an easement for street purposes across property already devoted to a public use, provided said use for street purposes will not materially impair or interfere with the public use to which the property is already being put."). Accordingly, we must examine the objections raised by Norfolk Southern in its response to the Town's motions for issuance of immediate writs of possession to determine if Norfolk Southern has raised any justiciable issues relative to this standard.

6

In opposing the Town's motions, Norfolk Southern contended that the Town's condemnation of the easements for use as grade crossings over Norfolk Southern's right-of-way would materially interfere with Norfolk Southern's use of the right-of-way. In support of this objection, Norfolk Southern presented the affidavit and report of George L. Reed, a licensed professional engineer specializing in traffic and transportation engineering. Reed's report stated that the distance between the railroad track and Poplar Avenue at each of the proposed grade crossings was less than fifty feet, and that this distance was inadequate for proper vehicle storage or for development of a safe railroad crossing. Specifically, Reed's report explained that:

> . . . . The Norfolk Southern track parallels Poplar Avenue, and for most of the site distance along the site frontage, is located immediately adjacent (south) of the roadway. This presents a very difficult visual recognition problem for motorists traveling along Poplar who may not be aware of, or may not see the rail crossings. Even worse, these motorists may not see a train or may not be able to effectively judge its speed if it is approaching from behind, particularly if the motorist and the train are traveling at nearly the same speed. The motorist may not be aware there is a grade crossing immediately south of Poplar and may suddenly come upon the crossing, or vehicles stopped for the crossing. . . .
>
> The short distance between the track and Poplar Avenue presents another hazard, because there is insufficient distance at the proposed Shea and Bray Station Roads to properly store stopped vehicles between the track and Poplar. . . . This is a particular problem for long vehicles, including large trucks, transit buses and school buses, who may not be able to clear the track before being trapped or required to stop at Poplar Avenue. The importance of this point was underlined by the 1995 Fox River Grove, Illinois school bus crash.

Although case law in this area appears to be somewhat sparse, we conclude that the objection raised by Norfolk Southern presents a justiciable issue concerning the Town's right to take which the trial court should have determined at an evidentiary hearing prior to issuing the writs of possession. Other jurisdictions have recognized a similar standard for determining a municipality's right to condemn an easement over railroad property previously dedicated to public use. In Florida East Coast Railway Co. v. Broward County, 421 So. 2d 681 (Fla. Dist. Ct. App. 1982), the District Court of Appeal of Florida, in describing what it called the "traditional prior use doctrine," explained:

7

> Under [the traditional prior use] doctrine, property devoted to a public use cannot be taken and appropriated to another or different public use unless the authority to do so has been expressly given by the legislature or may be necessarily implied. Thus, the power of condemnation may not be exercised where the proposed use will destroy an existing public use in the absence of specific legislative authority. . . . However, when a taking will not materially impair or interfere with or is not inconsistent with the existing use, and the proposed use is not detrimental to the public, then a court possesses authority to order a taking of the property.

Florida East Coast, 421 So. 2d at 683 (emphasis added).

In Georgia Southern & Florida Railway Co. v. City of Warner Robins, 130 S.E.2d 151 (Ga. Ct. App. 1963), the Court of Appeals of Georgia stated that:

> "If the conditions are such that they may be reasonably made to consist, there is no such encroachment upon the prior public use as even appreciably to impair, much less extinguish, it; and therefore, even though some slight inconvenience may result to the prior occupant, there is no reason why a second public use, when granted even in general terms, may not be held to confer upon the public authorities the right in such manner to exercise it. A different result follows, however, when the enjoyment of the second use involves the practical extinguishment of the former, or renders its exercise so extremely inconvenient and hazardous as practically to destroy its value. In such a case the right to enjoy the second use must rest upon express legislative authority, and will not be implied. The exercise of the second use, under such circumstances, would amount to a forfeiture of the first."

Georgia Southern, 130 S.E.2d at 153-54 (emphasis added) (quoting City Council of Augusta v. Georgia R.R. & Banking Co., 26 S.E. 499, 500 (Ga. 1896)).

We recognize that the standard set forth by the Georgia court is stricter than the standards applied in Tennessee and Florida. The Georgia court required a showing that the municipality's use of the property would either practically extinguish the railroad's prior use, or render its exercise so extremely inconvenient and hazardous as practically to destroy its value. Georgia Southern, 130 S.E.2d at 153. In contrast, the Tennessee and Florida standards only require a showing that the municipality's use of the property would materially impair or interfere with the railroad's prior use of its right-of-way. City of Memphis, 67 S.W.2d at 553; Florida East Coast, 521 So. 2d at 683.

8

Nevertheless, we consider the Florida and Georgia courts' treatments of this subject to be significant for at least two reasons. First, the Florida and Georgia courts' tests indicate that, when courts are examining the deleterious effects of the municipality's use of the property upon the railroad's prior use, the courts may consider the detriment to the public and the hazards created by the municipality's later use. Additionally, the Georgia court indicated that, as a general rule, the railroad has the right to present evidence on this issue. In Georgia Southern, the court held that

> where a condemnor, under the doctrine of implied rather than express authority, seeks to take the property of another which previously has been dedicated to a public use, the condemnee as a matter of law has the right to offer evidence to show that the taking would practically extinguish the former use or render its exercise so extremely inconvenient and hazardous as practically to destroy its value.

Georgia Southern, 130 S.E.2d at 154.

In light of these authorities, we hold that the safety concerns raised in Norfolk Southern's objection to the Town's motions for issuance of immediate writs of possession were sufficient to entitle Norfolk Southern to an evidentiary hearing on the issue of whether the Town's use of the property will materially impair or interfere with Norfolk Southern's railroad operations.[4] Accordingly, we reverse the trial court's orders of possession and remand for the trial court to conduct an evidentiary hearing on this issue.[5]

In reversing the trial court's orders, we do not mean to suggest that any proven safety hazard will result in a denial of the Town's condemnation actions on remand. By

---

[4]We recognize that similar safety concerns were rejected by the court in Mobile & Ohio Railroad Co. v. Mayor of Union City, 194 S.W. 572 (Tenn. 1917). In that case, however, the prior use doctrine did not apply because the legislature had enacted specific legislation conferring upon Union City the authority to condemn the railroad property sought to be acquired therein. Id. at 573; see also Southern Ry. Co. v. City of Memphis, 148 S.W. 662, 664 (Tenn. 1912) (wherein legislature had enacted specific legislation conferring upon City of Memphis authority to appropriate railroad property for park or parkway purposes).

[5]In remanding for an evidentiary hearing, we reject the argument that Tennessee Code Annotated section 29-17-808 precludes Norfolk Southern from litigating any issue except the amount of compensation to be paid for the taking. Section 29-17-808 provides that "[t]he only issue or question that shall be tried upon exception shall be the amount of compensation to be paid for the property or property rights taken." T.C.A. § 29-17-808 (1980). We do not construe this statutory provision so as to preclude Norfolk Southern from litigating the Town's right to take. Rather, section 29-17-808 applies to the situation described in section 29-17-805, which entitles the property owner to a jury trial if the owner is not satisfied with the amount deposited by the condemner with the clerk of the court. T.C.A. § 29-17-805 (1980). We note that the language of section 29-17-803 implicitly, if not explicitly, entitles Norfolk Southern to question the Town's right to take. See T.C.A. § 29-17-803(c) (1980) (providing that condemner shall be entitled to writ of possession "if the right to take is not questioned").

9

their very nature, at-grade railroad crossings create safety risks for the public and for the railroad companies which use them.  See Florida E. Coast Ry. Co. v. Martin County, 171 So. 2d 873, 881-82 (Fla.), cert. denied, 382 U.S. 834 (1965); Department of Transp. v. Overton, 433 S.E.2d 471, 474 (N.C. Ct. App. 1993), review dismissed, 444 S.E.2d 448 (N.C. 1994).  Rather, in order to successfully defend against the Town's condemnation actions, Norfolk Southern must prove that the proposed grade crossings will result in conditions which are so hazardous that they materially impair or interfere with Norfolk Southern's prior use of the right-of-way.

The judgments of the trial court are hereby reversed, and this cause is remanded for further proceedings consistent with this opinion.  Costs of this appeal are taxed to Appellees, for which execution may issue if necessary.

_____
HIGHERS, J.

CONCUR:


_____
CRAWFORD, P.J., W.S.


_____
FARMER, J.