# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
### November 8, 2011 Session

## BECKY COOPER v. JASON POWERS ET AL.

**Appeal by Permission from the Circuit Court for Bradley County**
**No. V-03-1118      J. Michael Sharp, Judge**

---

### No. E2011-01065-COA-R9-CV-FILED-NOVEMBER 29, 2011

---

At its core, this case is about the application of an offset provision in an uninsured motorist ("UM") policy to an individual's claim for damages arising out of an automobile accident in the course and scope of her employment. The plaintiff Becky Cooper's workers' compensation claim arising out of the accident, along with another workers' compensation claim, this one for injuries sustained by the plaintiff "while getting a briefcase from her car," were settled and approved by the Chancery Court for Hamilton County. The "final order" of that court recites that the court acted upon the "joint petition of the employer, . . . the insurer, . . . and the employee, . . . for the approval of a proposed settlement under the . . . Workers' Compensation [Law]." The order does not expressly state that the plaintiff was paid any benefits for the injuries sustained in the automobile accident; but it does recite that she received all of the benefits to which she was due with respect to the two claims. The plaintiff filed the present action against the driver and owner of the other vehicle involved in the accident and served a copy of the complaint on Pacific Employers Insurance Company, the UM carrier of the company whose automobile the plaintiff was driving at the time of the accident. The UM carrier filed a motion for partial summary judgment asserting that it is entitled to an offset corresponding to the workers' compensation benefits to which the plaintiff was entitled under the Workers' Compensation Law with respect to the automobile accident. The trial court granted the UM carrier partial summary judgment in an order that states simply, without further elaboration, "[t]his is a final order." For several reasons, we hold that the court's order is not a final order under Tenn. R. Civ. P. 54.02. However, in the interest of the efficient administration of justice, *see* Tenn. R. App. P. 1, we exercise our discretion to treat this appeal as if it were before us pursuant to the provisions of Tenn. R. App. P. 9. With respect to the merits of this case, we affirm the trial court's order granting partial summary judgment and remand for further proceedings.

**Tenn. R. App. P. 9 Interlocutory Appeal; Judgment of the Circuit Court Affirmed; Case Remanded**


CHARLES D. SUSANO, JR., J., delivered the opinion of the Court, in which JOHN W. MCCLARTY, J., joined. HERSCHEL P. FRANKS, P.J., filed a separate dissenting opinion.

Gary W. Starnes, Chattanooga, Tennessee, for the appellant, Becky Cooper.

John D. Barry, Chattanooga, Tennessee, for the appellee, Pacific Employers Insurance Company.


**OPINION**

I.

On January 16, 2003, the plaintiff was driving a company automobile in the course and scope of her employment with ACE USA, when she was involved in an accident with an automobile driven by Jason Powers and owned by Joyce Powers. Pacific Employers Insurance Company provided insurance coverage with respect to the company automobile. The policy provides UM coverage with policy limits of $1,000,000. The plaintiff filed the present action against Jason Powers and Joyce Powers. It is undisputed, for the purpose of this appeal, that both Jason Powers and Joyce Powers were uninsured. The plaintiff served notice of this action on Pacific Employers. A default judgment was entered as to Jason Powers and Joyce Powers. Pacific Employers filed an answer and elected to defend the plaintiff's action.

Pacific Employers was also the workers' compensation carrier for ACE. The plaintiff made two workers' compensation claims against ACE arising out of two separate incidents. The first involved a January 11, 2000, back injury which occurred when she lifted her briefcase out of a company automobile. The second involved the injuries from the 2003 automobile accident that is the subject of the present action. On or about January 18, 2011, Pacific Employers filed a motion for partial summary judgment asserting that, since the automobile accident occurred in the course and scope of the plaintiff's employment, the policy provides no coverage for "lost wage, medical expense, and loss of earning capacity both temporary and permanent." The motion relies upon language in the policy that delineates the "Limit Of Insurance" by stating as follows:

> We will not pay for any element of "loss" if a person is entitled
> to receive payment for the same element of "loss" under any
> workers' compensation law, disability benefits or similar law.

The motion also relies on the order of the Chancery Court for Hamilton County entered on the joint petition of the plaintiff, her employer, and Pacific Employers, for approval of a proposed settlement of her workers' compensation *claims*. The order states, in pertinent part:

> The . . . Court hereby finds that on January 11, 2000 Rebecca G. Cooper sustained an injury to her low back, hip, right leg and right arm while getting a briefcase from her car . . . in the course and scope of her employment with ACE USA. The employee also sustained injuries from an automobile accident on January 16, 2003 . . . in the course and scope of her employment with ACE USA. . . .
>
> The Court finds that Rebecca G. Cooper was temporarily totally disabled for the period May 3, 2002 through September 27, 2002, January 13, 2003 through April 18, 2004 and April 21, 2004 through June 1, 2004 as a result of her injury, and that she has been paid temporary total disability benefits in the total amount of Fifty Thousand Three Hundred Thirteen and no/100 Dollars ($50,313.00) at a weekly rate of $541.00. The parties agree that no further temporary disability benefits are owing in this cause, and they agree that the employee's weekly compensation rate is $541.00. The Court finds that the insurer has paid or caused to be paid to date medical expenses totaling $111,342.62 which the parties believe to be the total of authorized medical treatment.
>
> The Court finds that Rebecca G. Cooper has reached her maximum medical improvement, and that she has sustained a permanent medical impairment of 12% to the body as a whole as a result of the work injury as evidenced by the report of Dr. James Osborn. The Court finds that the employee's permanent partial disability, as agreed by the parties, is 41.5% to the body as a whole, and that the insurer is willing to pay and the employee is willing to accept Ninety Thousand and no/100 Dollars ($90,000.00) for her permanent partial disability, which equates to 41.5% permanent partial disability to the body as a

-3-

whole or 166.35 weeks of benefits at the weekly rate of $541.00.
. . .

The Court further found that the employer and insurer agree to pay any unpaid medical bills for reasonable, necessary and authorized medical care incurred by the employee prior to the date of entry of this order as a result of the January 11, 2000 accident. The parties . . . agreed that the medical benefits portion of the employee's claim shall remain open . . . for any future or additional medical care or treatment rendered necessary by reason of the January 11, 2000 injury . . . .

*The Court finds that the petition and proposed settlement secure to the employee substantially all the benefits to which Rebecca G. Cooper is entitled under the Tennessee Workers' Compensation Act*, and that the approval of the petition and settlement agreement is in the employee's best interest. . . .

\* \* \*

In accordance with the Court's findings in this matter, the Workers' Compensation Statistical Data Form [("SD1")] filed with the Court in this cause contemporaneously with this Final Order complies with the requirements of T.C.A. § 50-6-244, and it is hereby approved.

(Emphasis added.) The motion and supporting documents in the present case do not include the SD1. One exhibit to the motion is the plaintiff's answers to interrogatories, one of which states, "I am not claiming lost wages in this matter. . . ."

The plaintiff's response admits she received benefits from the January 11, 2000, injury. She asserts, however, that she "did not receive any benefits, including but not limited to, temporary total, medical benefits, and permanent partial benefits, from ACE USA arising out of the January 16, 2003 work-related accident . . ." (Emphasis in original omitted.) She attached an affidavit which asserts that all the benefits received were "paid solely for my work-related injuries sustained on January 11, 2000." She also attached a copy of the SD1which lists the date of the injury as "01/11/2000" and the "body part" of the injury as "lower back area." It is the plaintiff's position that the SD1 confirms that the benefits received relate 100% to the January 2000 back injury and not to the neck injury sustained in the January 2003 automobile accident.

-4-

The trial court held that, if the plaintiff indeed did not receive any benefits under her court-approved settlement, it was because she voluntarily waived them. The court noted that she was clearly aware of her workers' compensation claim regarding the automobile accident and aware that compensation benefits were available. In fact, her response to the motion for partial summary judgment acknowledges that the 2003 neck injury occurred in the course and scope of her employment and was "subject to the Tennessee Workers' Compensation laws in effect" on the date of the injury. Furthermore, she joined with her employer and Pacific Employers in a petition seeking court approval of a workers' compensation settlement of both her claims. She states in her brief on appeal that the settlement resolved both claims.

The trial court held that the outcome was controlled by *Dwight v. Tennessee Farmers Mut. Ins. Co.*, 701 S.W.2d 621 (Tenn. Ct. App. 1985), which held that a voluntary waiver of workers' compensation benefits did not prevent a UM carrier from reducing the benefits payable by the amount of compensation benefits that "were available to the plaintiff . . ." 701 S.W.2d at 622. Accordingly, the trial court held that the plaintiff had "waived her right to collect Worker[s'] Compensation benefits from her employer based upon this accident, by her own voluntary act." The court further held "that the setoff provisions [in the Pacific Employers UM policy] entitle the insurance company to setoff Worker[s'] Compensation benefits that might have been paid." Ultimately, the court granted partial summary judgment "as it relates to the following elements of damages claimed by the plaintiff: 1) Any and all reasonably necessary medical expense, past and future; 2) Any and all temporary or permanent loss of earning capacity (impairment); and 3) Any and all permanent impairment." The court also granted "summary judgment as to lost wages" based on the plaintiff's interrogatory admission that she was not making "any claims for lost wages." The final sentence of the order granting partial summary judgment states, "[t]his is a final order."

II.

The plaintiff filed a notice of appeal from the order granting partial summary judgment. Pacific Employers raises a challenge to the jurisdiction of this Court to entertain the appeal of an order that recites it is a "final order" but does not otherwise comply with Tenn. R. Civ. P. 54.02 and is not supported by a "Rule 9 TRAP application." The plaintiff does not respond to the jurisdictional challenge other than stating in her brief, "[t]his matter is before the Appellate Court as a matter of right pursuant to Rule 3 of the Tennessee Rules of Appellate Procedure." Her one substantive issue on appeal, provided we have jurisdiction to reach the merits, is whether the trial court erred in granting partial summary judgment.

-5-

III.

A.

Obviously, Pacific Employer is correct when it says we must have subject matter jurisdiction over the appeal if we are to determine the merits. *In re Estate of Boykin*, 295 S.W.3d 632, 635 (Tenn. Ct. App. 2008). Subject matter jurisdiction is a threshold question that cannot be waived. *Id*. The presence or absence of subject matter jurisdiction is a question of law that we determine *de novo*, and *sua sponte* if necessary. *Northland Ins. Co. v. State*, 33 S.W.3d 727, 729 (Tenn. 2000); *Boykin*, 295 S.W.3d at 635. In light of the record before us, it is appropriate to begin with the obvious: not every order entered by a trial court is appealable as of right. *In re Estate of Henderson*, 121 S.W.3d 643, 645 (Tenn. 2003). Our starting place for testing our jurisdiction is Tenn. R. App. P. 3(a), which states:

> In civil actions every final judgment entered by a trial court from which an appeal lies to the Supreme Court or Court of Appeals is appealable as of right. Except as otherwise permitted in rule 9 and in Rule 54.02 Tennessee Rules of Civil Procedure, if multiple parties or multiple claims for relief are involved in an action, any order that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties is not enforceable or appealable and is subject to revision at any time before entry of a final judgment adjudicating all the claims, rights, and liabilities of all parties.

Setting aside for the moment the concept of an appeal of an interlocutory, *i.e.*, a non-final, order pursuant to Tenn. R. App. P. 9 or 10, an order cannot be appealed to this Court unless it (1) adjudicates all claims against all parties, or (2) is properly certified as final pursuant to Tenn. R. Civ. P. 54.02. *Henderson*, 121 S.W.3d at 645; *Andrews v. Fifth Third Bank*, 228 S.W.3d 102, 108 (Tenn. Ct. App. 2007). As described in *Henderson*,

> there is a mechanism, found in Rule 54.02 of the Tennessee Rules of Civil Procedure, by which a party may appeal an order that adjudicates fewer than all of the claims, rights, or liabilities of fewer than all the parties. Rule 54.02 provides as follows:

>> When more than one claim for relief is present in an action . . . or when multiple parties are involved, the court . . . may direct the entry of a final judgment as to one or more but fewer than

-6-

all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment. In the absence of such determination and direction, any order or other form of decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties shall not terminate the action as to any of the claims or parties, and the order or other form of decision is subject to revision at any time before the entry of the judgment adjudicating all the claims and the rights and liabilities of all the parties.

*Id*. at 645-46 (ellipsis in original; emphasis in original omitted). In ***Fox v. Fox***, 657 S.W.2d 747, 749 (Tenn. 1983), the Supreme Court identified the prerequisites to making an order final pursuant to Tenn. R. Civ. P. 54.02:

Rule 54.02 requires as an absolute prerequisite to an appeal the certification by the trial judge, first, that the court has directed the entry of a final judgment as to one or more but fewer than all of the claims, and, second, make an express determination that there is no just reason for delay. Such certification by the trial judge creates a final judgment appealable as of right under Rule 3 T.R.A.P.

Pacific Employers is correct that the mere recitation that an order is final, without more, does not, *ispo facto*, bestow jurisdiction on us over an otherwise interlocutory order. The order in the present case does not comply with Rule 54.02 as that "mechanism" was described in ***Henderson*** and ***Fox***. The most obvious missing ingredient is the complete lack of any "express determination that there is no just reason for delay." ***Fox,*** 657 S.W.2d at 749; ***Henderson***, 121 S.W.3d at 646. The order granting partial summary judgment is completely silent on the matter.

The second missing ingredient is the "certification by the trial judge . . . that the court has directed the entry of a final judgment as to one or more but fewer than all of the claims . . ." ***Fox***, 657 S.W.2d at 749. Although we are not inclined to hold a trial court to "incantations" we believe that, at a minimum, there should be something in the order to inform the reader that the trial court intends to treat what would otherwise be an interlocutory order as final under the mechanism provided in Tenn. R. Civ. P. 54.02. The order before us

makes no mention of Rule 54.02, and does nothing to inform the reader that the court has ruled on one of multiple claims and believes that it is useful to treat what would otherwise be an interlocutory order as a final order.

This leads us to the point of considering whether the order before us *is even susceptible* to certification as final under Rule 54.02. We hold that it is not. The order granting partial summary judgment disposes only of certain "elements of damages," namely, medical expenses, loss of earning capacity, bodily impairment, and lost wages. Rule 54.02 allows certification as final of an order that disposes of "one or more but fewer than all of the claims or parties . . ." This order did not dispose of any party. The same parties were in the case after entry of the order as were there prior to entry of the order. Nothing changed as far as the number and identity of parties are concerned. The question before us is, then, did the order dispose of any one claim? The answer to the question must be in the negative. Notably absent from Rule 54.02 is any mention of allowing the certification as final of an order which disposes of certain elements of a claim for damages but leaves the claim pending as to other elements. Our answer to the question is not the first to be rendered by this Court. In *Town of Collierville v. Norfolk Southern Railway*, 1 S.W.3d 68 (Tenn. Ct. App. 1998), we answered the question of whether an order that allowed Collierville to condemn property without determining the damages to the property owner could be properly certified as final pursuant to Tenn. R. Civ. P. 54.02. We held that it could not because

> our supreme court has held that "[a]n order made final pursuant to [rule] 54.02 must be dispositive of an entire claim or party." *Bayberry Assocs. v. Jones*, 783 S.W.2d 553, 558 (Tenn. 1990). In doing so, the court noted that rule 54.02 certification by trial courts is improper unless the order certified could properly be viewed as a final judgment as to at least one claim or party in the lawsuit. *Id*. at 557 n. 2.

> As previously indicated, the trial court's orders determined only the issue of the Town's right to immediate possession of the easements over Norfolk Southern's railroad tracks. The orders of possession did not dispose of the Town's condemnation actions because the orders did not purport to determine all of the issues before the trial court relating to the condemnation claims, most notably the issue of any damages due Norfolk Southern. Inasmuch as the trial court's orders did not dispose of "an entire claim or party," we conclude that the orders are not reviewable under rule 54.02. *Bayberry Assocs*., 783 S.W.2d at 558.

*Id*. at 70 (brackets in original). We agree with the rationale of ***Collierville***, and hold that Tenn. R. Civ. P. 54.02 does not allow a trial court to certify an order, that disposes of only some, but not all, elements of damages, as final and appealable.

B.

Our determination that the order granting partial summary judgment was not final and appealable as of right does not necessarily end our inquiry. In the ***Collierville*** opinion, we elected, in the interests of judicial economy, to address the case pursuant to Tenn. R. App. P. 9. 1 S.W.3d at 71. We followed the same approach in ***Roberts v. Bailey***, 338 S.W.3d 540, 541 (Tenn. Ct. App. 2010), and in ***Alcoa Development & Housing Authority v. Monday***, No. 196, 1991 WL 12291 at *1 (Tenn. Ct. App. E.S., filed Feb. 7, 1991). As we explained in ***Collierville***,

> [a]lthough the ***Alcoa*** court concluded that the order of possession was not reviewable pursuant to rule 54.02, the court found the case suitable for rule 9 application and, thus, elected to review the case as an interlocutory appeal. ***Alcoa***, 1991 WL 12291, at *1; T.R.A.P. 9. In doing so, the court waived any requirements of rule 9 with which the appellant had not complied. ***Alcoa***, 1991 WL 12291, at *1; *see* T.R.A.P. 2 (providing that, with certain exceptions, this court may, "[f]or good cause, including the interest of expediting decision upon any matter, . . . suspend the requirements or provisions of any of these rules in a particular case on motion of a party or on [the court's] motion and may order proceedings in accordance with its discretion"). In the interest of judicial economy, we similarly elect to treat the subject appeal as an interlocutory appeal by permission pursuant to rule 9. *See also **Munke v. Munke***, 882 S.W.2d 803, 805 (Tenn. App. 1994); ***B.L. Hodge Co. v. Roxco, Ltd.***, No. 03A01–9704–CH–00144, 1997 WL 644960, at *1 n. 3 (Tenn. App. Oct.16, 1997); T.R.A.P. 9.

*Id*. at 70-71.

In the present case, we will not be waiving any requirement of substance in order to hear the case pursuant to Tenn. R. App. P. 9. The rule is lengthy, but the core requirements are (1) permission by the trial court for the issue to be heard by the appellate court despite matters still pending in the trial court; (2) some showing that the issue is worthy to be heard as an exception to the normal rule of deciding cases only after a final judgment; and (3) the

agreement by this Court to hear the matter. The trial court's inclusion of the language identifying the order as a "final order" indicates that the trial court wanted to have an answer to the question posed by Pacific Employers' motion before it heard the full case on the merits. We can easily see how a trial court would desire some guidance on this issue before holding a trial on the merits. Finally, we agree, in this case, that the interest of judicial economy will be served by now answering the questions before us, without waiting on a full plenary trial. Accordingly, we will treat this as an appeal by permission over which we are given subject matter jurisdiction by Tenn .R. App. P. 9.

A word of caution to the bench and bar is in order. It would be a mistake to assume that we will continue to employ Rule 9 to assume jurisdiction of (1) an appeal claimed by the appellant to be pursuant to Tenn. R. Civ. P. 54.02 but one that fails to be properly certified as final in full compliance with the language of the rule, or (2) an appeal, as in the present case, that is not authorized by Rule 54.02. In either event, Rule 54.02 is part of a system of rules that concern appellate jurisdiction, all of which are readily available to be read, and all of which must be followed.

## IV.

### A.

We turn now to the merits of the trial court's grant of partial summary judgment. We note that the facts are undisputed; we are concerned only with the legal issue of whether Pacific Employers can reduce its UM obligation by the workers' compensation benefits available to the plaintiff from her January 2003 injuries resulting from the automobile accident. Our review of questions of law is *de novo*, with no presumption of correctness. *Whaley v. Perkins*, 197 S.W.3d 665, 670 (Tenn. 2006).

### B.

The plaintiff contends that the only legitimate reason UM carriers are allowed to reduce their obligations by workers' compensation benefits is to avoid a duplication of benefits to the insured. She points us to Tenn. Code Ann. § 56-7-1205 (2008) which states that insurance forms "may include terms, exclusions, limitations, conditions, and offsets that are designed to avoid duplication of insurance and other benefits." She also relies upon two cases that interpret the statutory language to mean that an insured cannot be forced, through offsets, exclusions or limitations in a UM policy, to take a double reduction of benefits. *Bayless v. Pieper*, No. M2008-01073-COA-R3-CV, 2009 WL 2632763 at *2-3 (Tenn. Ct. App. M.S., filed Aug. 26, 2009)(UM carrier could not take an offset for both the $100,000 payment from tortfeasor's insurer and workers' compensation benefits of $84,937.65 because

the tortfeasor's liability insurance proceeds were used to reimburse a workers' compensation subrogation lien – this would amount to a double reduction); **Boyce v. Geary**, No. 01-A-01-9409-CV-00410, 1995 WL 245389 at *3 (Tenn. Ct. App. M.S., filed April 28, 1995)(same holding).

The plaintiff's core argument is that she did not receive a duplication of benefits; therefore the statute, as interpreted in **Bayless and Boyce**, controls the outcome. We do not believe that **Bayless** or **Boyce** have any application to the present case. We agree with the trial court that this case is controlled by our opinion in **Dwight v. Tennessee Farmers Mutual insurance Company**, 701 S.W.2d 621 (Tenn. Ct. App. 1985). In that case, Ms. Dwight had sustained an injury as a passenger in an automobile driven by a co-worker. **Id**. at 621. She knew that the injury was sustained in the course and scope of her employment and that she was entitled to claim workers' compensation benefits, but she "voluntarily refused to assert a claim against her employer." **Id**. at 622. Ms. Dwight argued that the UM carrier could not claim a reduction for her workers' compensation benefits because she made no claim and collected no benefits. **Id**. We affirmed the trial court's partial summary judgment because Ms. Dwight's "unilateral waiver of benefits may not operate to increase the contractual obligations of the insurer. The policy provision operates to reduce the coverage where 'the benefits are available.' " **Id**.

The plaintiff offers two related arguments why **Dwight** does not control the present case. She argues "there is a very big difference between the phrase 'payable' as in the **Dwight** case and the phrase 'entitled to receive' under [Pacific] Employer's Insurance U/M provision." She also argues that she is not " 'entitled to receive' any workers' compensation benefits" because she has settled her workers' compensation case in a final judgment. We see these distinctions as being without a difference. The only reason the workers' compensation benefits were no longer "payable" in **Dwight** was that Ms. Dwight declined to assert her claim. Had the same policy language as in the present case been used in **Dwight**, we would have undoubtedly held that Ms. Dwight was no longer "entitled to receive" the workers' compensation benefits because she voluntarily declined to prosecute her claim and that she could not thereby "increase the contractual obligations of the insurer." **Id**. at 622. Therefore, we do not see the slight difference in wording of the policies to be a reason for departing from **Dwight**.

We are also unconvinced that the settlement of the plaintiff's workers' compensation claim for what she argues was zero benefits is a valid distinction. First, we note that the judgment approving the settlement specifically found "that the petition and proposed settlement secure to the employee substantially all the benefits to which Rebecca G. Cooper is entitled under the Tennessee Workers' Compensation Act . . . ." Among the benefits to which she was entitled are those elements of damages upon which the trial court granted

partial summary judgment. *See* Tenn. Code Ann. §§ 50-6-204 through 210 (2008 and 2011 Supp.). Thus, the plaintiff's argument that she received nothing in the settlement for her 2003 injury is contrary to the court's explicit finding. More importantly, even if the plaintiff received no benefits in the workers' compensation settlement related to the 2003 injury, there is nothing in the present record to show that, up through entry of the judgment approving the workers' compensation settlement, she was not entitled under the law to receive benefits as a result of her injury. To the contrary, as we have previously stated, her response to the motion for partial summary judgment acknowledges that the 2003 injury occurred in the course and scope of employment and was therefore "subject" to workers' compensation. We know of no reason that an employee's waiver by failing to assert a claim, as in *Dwight*, should be treated any differently, for the purpose of a UM policy offset, from a waiver by judgment that acknowledges a claim but fails to expressly award any benefits.

There can be no question that *Dwight* is good law. It was discussed by our Supreme Court in *Hudson v. Hudson Municipal Contractors*, 898 S.W.2d 187 (Tenn. 1995), followed by this statement which affirms our holding in *Dwight*:

> Under the holdings of *Terry v. Aetna Casualty & Sur. Co.* [,510 S.W.2d 509 (Tenn. 1974)] and *Dwight v. Tennessee Farmers Mut. Ins. Co.*, it is clear that an insured party's right to recover under an uninsured motorist policy that contains a setoff provision . . . may be reduced by the amount that the insured has collected, *or could collect*, under the Workers' Compensation Law.

*Id*. at 189 (emphasis added). As we have stated numerous times, based on the undisputed facts in this record, Cooper could have collected medical and other workers' compensation benefits as a result of her injury in the automobile accident.

Accordingly, we stand by our holding that *Dwight* controls the present case. It follows that the trial court did not commit an error of law in granting partial summary judgment based, as the court's decision was, on the rationale of *Dwight*.

V.

The order of the trial court granting partial summary judgment is affirmed. Costs on appeal are taxed to the appellant, Becky Cooper. This case is remanded, pursuant to applicable law, for further proceedings.

_____
CHARLES D. SUSANO, JR., JUDGE